IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2013

**STATE OF TENNESSEE v. DALE SAMUEL WAGGONER**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1104      Cheryl Blackburn, Judge**

---

**No. M2013-00731-CCA-R3-CD - Filed April 4, 2014**

---

Following a jury trial, the defendant, Dale Samuel Waggoner, was convicted of aggravated robbery, a Class B felony, and being a felon in possession of a handgun, a Class E felony. He was sentenced to concurrent terms of eighteen years, to be served at eighty-five percent, for the aggravated robbery conviction and three years, to be served at thirty-five percent, for the felon in possession of a handgun conviction. On appeal, he argues that the evidence is insufficient to support his convictions. Based upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Jason Chaffin, Nashville, Tennessee (on appeal) and Harry Christensen, Lebanon, Tennessee (at trial), for the appellant, Dale Samuel Waggoner.

Robert E. Cooper, Jr., Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Megan M. King and Jeff P. Burks, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant and two co-defendants, Deonte Davis and Tiwon Harvell, were indicted for aggravated robbery arising out of the January 20, 2011 robbery of the Mapco Gas Station located at 5400 Old Hickory Boulevard in Davidson County. Additionally, the

defendant was indicted for possession of a handgun by a convicted felon.

John Dellar testified that he was working the 10:00 p.m. to 6:00 a.m. shift on January 20, 2011, at the Mapco when he noticed a dark-colored, four-door SUV outside the front door at about 1:30 a.m. A man got out of the passenger side, walked around the vehicle, and talked to the driver for about a minute before coming inside the store. Dellar described the man as African-American, about six feet tall, and wearing black pants, black shirt, a black or dark blue hooded coat with fur around the hood, and a baseball cap. The man then walked up to the cash register and told Dellar, "[G]ive me all the mother-f****** money." The man pulled up his black shirt, revealing a white T-shirt underneath, and retrieved a black automatic pistol with red sights from the front of his pants, which he pointed at Dellar. Dellar took the cash drawer out of the register and placed it on the counter. The man removed the money from the drawer, about $41 and some change, as well as a $2 bill stamped with the Mapco store number, and put it in his pants pocket. The man also took a carton of Newport cigarettes. The man then left and ran south through the parking lot. Dellar locked the door and called 9-1-1. He gave a description of the robber and the suspect vehicle to the 9-1-1 dispatcher, and the police arrived about ten minutes later. Dellar identified the $2 bill bearing the Mapco's store number, which was admitted as an exhibit. A copy of the store's surveillance video was played for the jury.

Dellar acknowledged that, at a preliminary hearing, he identified co-defendant Deonte Davis as the robber. Dellar explained that Davis had been in the store a few days before the robbery and had a confrontation with the manager. As a result, Davis' picture had been hung up in the manager's office after the robbery to inform the employees that Davis was not allowed in the store. Dellar believed that he identified Davis as the robber because "his face was very familiar looking at it every night."

Sergeant Josh Blaisdell of the Metropolitan Nashville Police Department ("MNPD") testified that he was about one mile from the Mapco when he was dispatched to a robbery in progress at 1:34 a.m. About thirty seconds to a minute later, he noticed a vehicle matching the description of the suspect SUV parked in the vacant lot of a nearby strip mall. When the SUV pulled onto Old Hickory Boulevard, Sergeant Blaisdell followed in his unmarked police vehicle and attempted to make a traffic stop by activating his blue lights. The SUV accelerated, and Sergeant Blaisdell activated his siren. When the SUV did not stop, Sergeant Blaisdell pursued it at speeds of sixty to seventy miles per hour down Old Hickory Boulevard for about a mile. After the vehicle crossed the intersection of Bell Road, which came to a dead end, it "went off into the woods and hit a tree." The driver, whom Sergeant Blaisdell later learned was Tiwon Harvell, jumped out and fled into the woods. Sergeant Blaisdell approached the vehicle and found the defendant, who was wearing a black shirt, in the front passenger seat and another individual, later identified as Deonte Davis, in the backseat. The

defendant and Davis were taken into custody.  Sergeant Blaisdell saw a baseball cap and a handgun on the front passenger floorboard, a carton of Newport cigarettes near the center console, and some cash underneath the driver's seat.  About five minutes later, Harvell was apprehended and taken into custody.

MNPD Officer Greg Blackburn testified that he, in his marked police vehicle with emergency equipment activated, joined in Sergeant Blaisdell's pursuit of the suspect vehicle down Old Hickory Boulevard.  After the suspect vehicle crashed into a tree, the driver jumped out and ran through the wood line.  As Officer Blackburn and Sergeant Blaisdell approached the vehicle, they discovered the defendant in the front passenger seat and Deonte Davis in the middle row seat of the SUV.  The defendant and Davis were taken into custody, and Officer Blackburn noticed a black handgun on the floorboard of the front passenger seat in plain view.  Officer Blackburn bagged and labeled the coins, including thirty-nine quarters, sixty-nine dimes, and eleven nickels, recovered from the defendant's person.  Officer Blackburn said that a $2 bill was also recovered from the scene.  Officer Blackburn said that he noted in his offense report that the defendant was wearing a black, hooded jacket, black pants, and a black shirt.

MNPD Officer Michael McCord testified that he responded to the scene of the crash and took the defendant, who was in the passenger's seat, into custody.  Officer McCord patted down the defendant to check for weapons and noticed that he had "pockets full of coin change."

Detective Eric Harrison of the MNPD testified that when he arrived at the scene of the crash, the defendant and Davis were in custody and Harvell was missing.  As he approached the suspect vehicle, he noticed a handgun with red sights on the floorboard of the passenger side.  He also saw an opened carton of Newport cigarettes and unopened packs of cigarettes scattered throughout the vehicle.

Officer Daniel Turner of the MNPD testified that when he arrived at the scene where the suspect vehicle had crashed, Sergeant Blaisdell advised him that the driver had fled the area and gave him a description of the flight direction.  Officer Turner then drove up Bell Road and subsequently apprehended Harvell, who was wearing a black sweatshirt and black pants, as he "came running out . . . of the woods."

Rhonda Evans, a crime scene technician with the MNPD, testified that she responded to the scene of the crashed suspect vehicle and made photographs and collected items of evidence.  Inside the vehicle, she saw a handgun on the front passenger floorboard, an opened carton of Newport cigarettes, and two opened packs of Newport cigarettes.  She identified a photograph of the money recovered from the vehicle:  a $20 bill, three $5 bills,

and six $1 bills, totaling $41. She also identified photographs of the Hi-Point handgun found in the vehicle, as well as the magazine, the rounds removed from the magazine, and a round removed from the chamber. She lifted fingerprints off the carton of Newport cigarettes, the two unopened packs, one opened pack, and the magazine. She was unable to lift any prints off the gun but noticed it had red sights. She explained that it was not unusual to not find any prints on the weapon because the robbery occurred in January when it was "pretty cold." She also identified photographs she made of the defendant's clothing, which included dark-colored pants, a dark-colored, hooded jacket, a white tank top, a black shirt, and black shoes.

On cross-examination, Evans acknowledged that she did not see any fur on the hood of the defendant's jacket. She agreed that Davis' jacket had a zipper all the way around the hood but no fur.

Andreana Breveard, a property supervisor with the Davidson County Sheriff's Office, testified that she collected the defendant's clothing when he was booked at the sheriff's office on January 20, 2011. His clothing included a black, hooded jacket, black pants, gray tank top, black shirt, and black shoes.

Lorita Marsh, a police identification supervisor with the MNPD, testified that she had been a latent print examiner since 1995. She said that some of the latent fingerprints submitted to her in the case were of no value for comparison, but she was able to determine that a palm print lifted from the carton of Newport cigarettes and a thumbprint lifted from one of the opened packs of Newport cigarettes found in the suspect vehicle matched the defendant's prints. On cross-examination, Marsh agreed that someone else could have handled the carton of cigarettes and "not gotten a print picked up."

The defendant elected not to testify and rested his case without presenting any proof.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to support his convictions for aggravated robbery and possession of a handgun by a convicted felon. Specifically, he argues that the evidence "was tenuous and entirely circumstantial" because the victim, at a preliminary hearing, identified the robber as co-defendant Deonte Davis and there was no proof that the defendant was at the scene of the robbery or that the carton of cigarettes containing the defendant's palm print was the same carton stolen during the robbery. The defendant also argues that the State failed to prove that he had either actual or constructive possession of the firearm.

-4-

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that

on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In the light most favorable to the State, the evidence is sufficient to support the jury's finding that the defendant was the perpetrator of the aggravated robbery. The defendant was apprehended from the fleeing suspect vehicle after it crashed into a tree shortly after the robbery. The victim's description of the robber's clothing accurately matched the clothing the defendant was wearing when he was apprehended, with the exception that the hood of his coat was not fur-lined. The victim reported that $41, a $2 bill bearing the Mapco's store number, some change, and a carton of Newport cigarettes were taken during the robbery. Currency in the amount of $41 and the $2 bill bearing the Mapco's store number were recovered from the scene of the crashed suspect vehicle, and the defendant had "pockets full of coin change" when he was apprehended. A palm print lifted from the carton of Newport cigarettes and a thumbprint from a pack of Newport cigarettes found in the suspect vehicle belonged to the defendant. Although the victim, at a preliminary hearing, identified co-defendant Deonte Davis as the robber, he explained that he did so because Davis' picture had been hung up in the store manager's office to alert employees that Davis was banned from the store and, as a result, Davis' face had become "very familiar" to him. In sum, the evidence was sufficient to establish the identity of the defendant as the robber.

The defendant also argues that the State failed to establish that he had either actual or constructive possession of the firearm. "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted). Criminal liability may result from sole possession or joint possession with another person. See State v. Richards, 286 S.W.3d 873, 885-86 (Tenn. 2009).

The victim testified that the robber pointed a black automatic pistol with red sights at him during the robbery. Officers who responded to the scene of the crashed suspect vehicle shortly after the robbery testified that the defendant was sitting in the front passenger seat and that a black handgun with red sights was found on the floorboard of the front passenger side. This was sufficient for the jury to find that the defendant was in possession of the handgun. We conclude, therefore, that the evidence is sufficient to sustain the defendant's convictions for aggravated robbery and possession of a handgun by a convicted felon.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE