# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 6, 2009 Session Heard in Columbia[1]

## STATE OF TENNESSEE v. MARCUS RICHARDS

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Williamson County
No. II-CR-101400    Timothy L. Easter, Judge**

_____

### No. M2006-02179-SC-R11-CD - Filed July 10, 2009

_____

The issue presented in this case is whether evidence seized from the Defendant's person following a warrantless search should have been suppressed or, conversely, whether the search was justified as a search incident to lawful arrest. After receiving a tip from a citizen informant that three individuals were involved in drug activity around a picnic table in the back yard of a house, police officers were dispatched to the scene and found the three identified persons plus a fourth person – the Defendant – seated around the picnic table. As the officers approached, they observed one participant sweep the table with his arm and drop a corner baggie to the ground, and they subsequently discovered that this person held a rolled dollar bill containing a white powdery residue. The officers also saw a white powdery residue on the surface of the table that field-tested positive for cocaine. Although the Defendant was seated at the picnic table where the police officers observed evidence of cocaine use, they did not see the Defendant engaged in any illegal or suspicious activity. An initial "pat down" search of the Defendant revealed no drugs or weapons. After a consensual search of one of the participants at the table revealed white powder on the seat of his wheelchair, the officers searched the Defendant a second time and found a bag of marijuana and a bag of cocaine in his pocket. The Defendant was indicted for misdemeanor possession of marijuana and cocaine. The trial court found that the search was proper due to exigent circumstances supported by probable cause, but the Court of Criminal Appeals reversed, finding that the circumstances did not support the existence of probable cause. After review, we conclude that the search of the Defendant cannot be justified as a search incident to an arrest because, at the time of the search, the officers did not have probable cause to arrest the Defendant. The judgment of the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

_____

[1] Oral argument was heard in this case on February 6, 2009 at Columbia State Community College in Columbia, Maury County, Tennessee, as part of the Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) Project.

1

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, and GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a dissenting opinion.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Mark A. Fulks, Senior Counsel, for the appellant, State of Tennessee.

Venus Niner, Franklin, Tennessee, for the appellee, Marcus Richards.

**OPINION**

**Background**

On June 3, 2005, Lieutenant Chris Clausi of the Franklin Police Department received a phone call from a concerned citizen who reported "drug activity" and an "actual drug transaction" at 144 Acton Street in Franklin, a house known by the Franklin Police to have a history of drug activity. Lieutenant Clausi knew the citizen informant's identity and had received similar information from this informant for years. Although Lieutenant Clausi could not recall if any of the previous tips had resulted in arrests or prosecutions, he testified that the information had always been reliable. Furthermore, Lieutenant Clausi stated that he had no reason to believe that the informant was of the criminal milieu but that he had not done a criminal background check to confirm it.

Specifically, Lieutenant Clausi was advised by the citizen informant that the informant had seen a "drug deal going down between Trent and the guy in the purple truck," that the drug activity was occurring at a picnic table behind the house at 144 Acton Street in Franklin, and that the participants were drinking beer. The informant also provided information as to the identity of the three participants: Trent Covington, "the girl from drug court," and someone who drove a "maroon-colored Bronco/Blazer type SUV," which Lieutenant Clausi knew from prior experience was likely Maurice Head. The informant did not identify the Defendant by name or by description of any sort, nor did the informant indicate that there was a fourth participant.

Upon receiving the informant's tip, Lieutenant Clausi notified Officers Rose and Davis, who were on patrol in the area, that he had received a phone call concerning "drug activity possibly going on behind Trent's house at the picnic table with Trent and one of the girls from drug court." Officer Davis testified that they interpreted the information to mean that drug use was occurring, because in the officers' experience, drug sales usually occurred in front of the house while drug use occurred behind the house.

In a strategic decision to prevent the destruction of evidence, the officers left their patrol car out of sight and walked to the wooden picnic table from a neighbor's backyard. As the officers approached, all of the suspects were visible to them, and although the record is not

2

entirely clear, it appears that Head was seated to the officers' left, Covington in his wheelchair in the middle, the Defendant to the officers' right, and the female was seated across from the Defendant. When the officers were approximately 15 to 20 yards from the table, Head became aware of their approach and responded by sweeping off the table with his arm and dropping an object, later identified as an empty corner baggie, to the ground. Officer Davis testified that the suspects all had "that look" about them, characteristic of suspects who have been caught in an illegal act. The officers instructed the suspects not to move, and they complied.

Officer Rose approached Head and asked him what was in his hand. Head gave Officer Rose a rolled-up dollar bill with white residue on it, which, in the officers' experience, was indicative of cocaine use. In addition, the officers noticed a white powder on the surface and in the cracks of the picnic table and dusting the ground. The powder on the table, according to Officer Davis, "was a very small amount, it wasn't enough to send to the lab" and "it was in the cracks and everything and you couldn't – there was no way to successfully collect it, that's why we field tested it there." The officers field-tested the powder by placing a testing substance on the table. The test was positive for cocaine.

Officer Rose searched Head but found no drugs on him. After the powdery residue field-tested positive for cocaine, however, the officers briefly handcuffed Head but ultimately released him with a citation. After Head was searched, Officer Davis performed a "pat down" search of the Defendant. Officer Davis testified that the "pat down" was simply a check for weapons, but Officer Rose testified that they had no reason to believe that any of the suspects had weapons. The initial "pat down" revealed no drugs or weapons.

Covington consented to a search of his person and wheelchair. The officers lifted him from his chair and placed him on the table, revealing a white powder on the seat of his chair. Officer Davis testified that the powder in Covington's wheelchair also field-tested positive for cocaine. Covington's search revealed no other drugs. Covington was cited for, and pled guilty to, misdemeanor possession of cocaine.

Following Covington's search, Lieutenant Clausi instructed Officer Davis to search the Defendant again, this time for drugs. Although the officers had not observed the Defendant participating in any illegal activity, Officer Davis testified that this search was premised on the Defendant's proximity to the cocaine on the table and the officers' hunch that "if there's some drugs there . . . there's a good possibility that there's other narcotics there." The Defendant is paralyzed on one side of his body, so Officer Davis obtained the assistance of another officer who had arrived on the scene to help the Defendant stand up during the search. This full search was more intrusive than the initial "pat down," and Officer Davis discovered a bag of cocaine and a bag of marijuana in the Defendant's pocket. The Defendant was arrested and later indicted for possession of cocaine and marijuana, each a Class A misdemeanor.

In the trial court, the Defendant moved to suppress the evidence found during the second search, but his motion was denied. The trial court concluded that the Defendant's proximity to the cocaine supported probable cause to search and "the possibility that the Defendant might flee from their presence or destroy vital evidence" was an exigency that justified the warrantless

3

search. After the trial court denied the Defendant's motion to suppress, the Defendant pled guilty to possession of cocaine, but preserved the following certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2):

> Whether the evidence seized from the defendant should have been suppressed because the continued seizure and search of the person of the defendant by the police was not supported by probable cause or reasonable suspicion in violation of the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution.

The Court of Criminal Appeals held that the evidence should have been suppressed because the officers lacked probable cause for the second search. State v. Richards, No. M2006-02179-CCA-R3-CD, 2008 WL 343150, at \*5 (Tenn. Crim. App. Feb. 6, 2008). The intermediate appellate court reasoned that nothing had changed during the time between the first and second searches that justified a second, more intrusive search, and cited Ybarra v. Illinois, 444 U.S. 85, 91, 100 (1979) for the proposition that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Richards, 2008 WL 343150, at \*5. The Court of Criminal Appeals emphasized that the citizen informant did not specifically identify the Defendant, and that the officers did not witness the Defendant participating in any illegal activity. The court concluded that the Defendant's mere presence at the scene when officers arrived, unaccompanied by other "illegal or suspicious activity," did not give rise to probable cause. Id. Because its ruling that the officers lacked probable cause was dispositive, the Court of Criminal Appeals did not address the question of whether the exigent circumstances exception applied in this case.[2]

**Analysis**

Although this case comes to us on appeal as a certified question of law under Tenn. R. Crim. P. 37(b)(2) (2008), we review it under the same standard as an appeal from a judgment denying a motion to suppress. See State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006). The "trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, although "[t]he party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence," id., the burden remains on the State to prove that a warrantless search was constitutionally permissible. Nicholson, 188 S.W.3d at 656-57; State v. Henning, 975 S.W.2d 290, 298 (Tenn. 1998). We review questions of law de novo. State v. Day, 263 S.W.3d 891, 900 (Tenn. 2008).

The Fourth Amendment to the Constitution of the United States, applicable to the states as recognized in Mapp v. Ohio, 367 U.S. 643 (1961), provides:

---

[2] In the present appeal, the State does not argue that the exigent circumstances exception applies, nor did the Court of Criminal Appeals rule on the exigent circumstances exception, so we are not presented with the question of whether exigent circumstances justified the warrantless search.

4

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, Article I, § 7 of the Tennessee Constitution provides:

[T]he people shall be secure in their persons, houses, papers, and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Although this Court has stated that the Tennessee provision is "identical in intent and purpose with the Fourth Amendment," Sneed v. State, 423 S.W.2d 857, 860 (Tenn. 1968), we have also noted that our search and seizure law has developed independently from federal law. Thus, where "there has been a settled development of state constitutional law which does not contravene the federal, we are not inclined to overrule earlier decisions unless they are demonstrably erroneous." State v. Lakin, 588 S.W.2d 544, 549 (Tenn. 1979) (noting that Tennessee decisions applying search and seizure law are "somewhat more restrictive than" federal case law). Furthermore, even where there is no "settled development of state constitutional law," we may decline to follow federal precedents when they are "inadequate" to serve the purposes of article I, § 7. State v. Jacumin, 778 S.W.2d 430, 435-36 (Tenn. 1989) (rejecting the federal "totality of the circumstances" test for a criminal informant's reliability in favor of the two-pronged "basis of knowledge" and "veracity" test); see also State v. Cox, 171 S.W.3d 174, 183 (Tenn. 2005) ("We are free to interpret the provisions of our state constitution to afford greater protection than the federal constitution."); State v. Randolph, 74 S.W.3d 330, 335 (Tenn. 2002) (noting that "this Court has not hesitated to extend greater privacy protections to the citizens of this State when appropriate under article I, § 7").

Under either the federal or the state constitution, a warrantless search is presumed invalid, and any evidence discovered as a result is subject to suppression. State v. Day, 263 S.W.3d 891, 901 (Tenn. 2008); State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007). There are several exceptions to this presumption, including searches incident to a lawful arrest and searches supported by probable cause in the presence of exigent circumstances.[3] Day, 263 S.W.3d at 901 n.9. These exceptions, however, must remain "well-delineated" and must be "jealously and carefully drawn." Id. at 901 (quoting Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971)); see also Rippy v. State, 550 S.W.2d 636, 641 (Tenn. 1977). This Court has consistently and repeatedly observed that exceptions to the constitutional warrant requirement

---

[3] The other exceptions include "plain view," "hot pursuit," "stop and frisk" supported by reasonable suspicion of criminal activity, and consent. Day, 263 S.W.2d at 901 n.9.

5

are "narrowly" defined.  E.g., Nicholson, 188 S.W.3d at 656; Randolph, 74 S.W.3d at 334; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The State argues that the search that revealed drugs on the Defendant's person may be justified as a search incident to lawful arrest.  The trial court approved of the search under the exigent circumstances exception.  The Court of Criminal Appeals reversed on the ground that there was no probable cause to believe that the Defendant was in possession of illegal drugs. Richards, 2008 WL 343150, at *5.

**Search Incident to Lawful Arrest**

In order to justify a warrantless search as incident to a lawful arrest, four conditions must be met: (1) the arresting officer must have probable cause to believe that the defendant had engaged or was engaging in illegal activity, State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999) (holding that a "custodial arrest," which is required to justify a search as incident to arrest, must be "based on probable cause"); (2) the probable cause must attach to an offense for which a full custodial arrest is permitted – i.e., there must be statutory grounds for a warrantless arrest, see Tenn. Code Ann. §§ 40-7-103, 40-7-118(c) (2006); cf. State v. Walker, 12 S.W.3d 460, 467-68 (Tenn. 2000); (3) the arrest must be consummated either prior to or contemporaneously with the search,  Crutcher, 989 S.W.2d at 302 n.12; and (4) the search must be incident to, not the cause of, the arrest.  Id. at 302 (observing that "[i]t is axiomatic that a warrantless police search may not precede an arrest and serve as part of its justification"); see Smith v. Ohio, 494 U.S. 541, 543 (1990); Hughes v. State, 588 S.W.2d 296, 308 (Tenn. 1979) (observing that "no search or frisk 'unlawful at its inception may be validated by what it turns up'") (quoting Wong Sun v. United States, 371 U.S. 471, 484 (1963)).

This search fails as a search incident to arrest for two reasons.  First, we agree with the Court of Criminal Appeals that the arrest was not supported by probable cause because the facts, circumstances, and reliable information known to the arresting officers were not sufficient to warrant a prudent person in believing that the Defendant had committed an offense.  Probable cause has been articulated variously as a "fair probability that contraband or evidence of a crime will be found," State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)), as "reasonable grounds for suspicion, supported by circumstances indicative of an illegal act," State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006), and as "facts and circumstances and reliable information . . . 'sufficient to warrant a prudent [person] in believing that the [individual] had committed an offense,'"  State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964) (second alteration in original)); see Day, 263 S.W.3d at 902.  Although these various formulations have the same meaning,[4] we believe that the "prudent person" standard provides the best guidance for

---

[4] The "fair probability" and "prudent person" standards are synonymous in Tennessee law.  In Jacumin, 778 S.W.2d at 435, n.2, the Court noted that the "duty" of the reviewing court is the same under the standard announced in Illinois v. Gates, 462 U.S. 213 (1983), and the standard retained by Tennessee.  The Court in Gates articulated that the duty of a reviewing court is to determine whether the circumstances give rise to a "fair probability" that evidence will be found. Gates, 462 U.S. at 238-29.  After approving of this formulation, the Jacumin Court applied the "prudent person" standard, holding that the facts of the case were not sufficient to "warrant a person of reasonable caution to believe that

6

law enforcement officers and reviewing courts. In the context of warrantless arrests, a search incident to arrest is supported by probable cause only if the facts, circumstances, and reliable information known to the officers will warrant a prudent person's belief that the suspect has committed an offense.

The State relies on Maryland v. Pringle, 540 U.S. 366 (2003), for the proposition that a suspect's ability to exercise dominion and control over an illegal substance supports probable cause that he is guilty of its possession. The State's argument in reliance on Pringle is unpersuasive for two reasons. First, we do not believe that Pringle should be read as broadly as the State urges because Pringle did not abandon the constitutional requirement that "the belief of guilt must be particularized with respect to the person to be searched or seized." Id. at 371. And second, the circumstances surrounding the officers' search of the Defendant are factually distinguishable from Pringle.

In Pringle, officers obtained consent to search a car, and during that lawful search they discovered five bags of cocaine in the back seat of the vehicle. Because none of the car's occupants – the driver, Pringle, and the backseat passenger – claimed possession, the sole issue was whether there was probable cause connecting Pringle to possession of the narcotics. The Court held, "[w]e think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." Id. at 372.

Pringle, however, did not overrule or retreat from the earlier case of Ybarra v. Illinois, in which the Court held that a defendant's presence in a small tavern for which a search warrant had been issued did not give the officers the particularized suspicion necessary to search his person. Ybarra, 444 U.S. 85, 93-94 (1979). The Court in Pringle noted that it was not a "guilt-by-association" case and that a search of a person requires "individualized suspicion." Pringle, 540 U.S. at 372-73. Further, as the Court stated in Pringle, "'[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' *and that the belief of guilt must be particularized with respect to the person to be searched or seized."* Id. at 371 (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)) (emphasis added).

Tennessee law is equally clear that probable cause does not attach to "groups." Tenn. Const. art. I, § 7 (requiring "particular[ized]" evidence with respect to "named" individuals); Day, 263 S.W.3d at 901 (recognizing that "article I, section 7 of the Tennessee Constitution protect[s] *individuals* from unreasonable searches and seizures") (emphasis added); Tenn. Code Ann. § 40-6-103 (2006) (providing that probable cause requires information "naming or describing the person . . . to be searched"). Pringle did not create, and Tennessee law does not recognize, any exception to the requirement of individualized suspicion for probable cause.

Moreover, the facts in Pringle are distinguishable from the present case. In Pringle, the officers discovered five bags of cocaine and $763 in rolled-up cash in an automobile as a result of a search that was unquestionably constitutional because of the driver's consent. The question

---

contraband was present." Jacumin, 778 S.W.2d at 437.

7

facing the Pringle Court was whether all three occupants of the car could escape *arrest* for possession of five bags of cocaine inside the car simply by denying possession of the drugs. Here, in contrast, the State is attempting to justify a warrantless *search* incident to arrest, and therefore must show that the officers had probable cause to believe that the Defendant had drugs on his person. Further, in this case the information provided by the informant specifically singled out individuals as the guilty parties, unlike Pringle's factual scenario. In United States v. Di Re, a case similar to the case at bar, in which the Supreme Court addressed the search incident to lawful arrest exception, the Court observed that "[a]ny inference that everyone on the scene of a crime is a party to it must disappear if the Government informer singles out the guilty person." United States v. Di Re, 332 U.S. 581, 594 (1948). The Pringle Court, citing the above principle from Di Re, found it significant that "[n]o such singling out occurred" in the Pringle case. Pringle, 540 U.S. at 374.

In the present case, Lieutenant Clausi testified as follows about the substance of the informant's tip, establishing that "such singling out" of individuals, other than the Defendant, occurred here:

> Q: Did that person [the informant] identify the people at the table, naming each person?
> A: Not each person, they named – they named one person and described two others to the point that I knew who that person was talking about.
> Q: What was the description that they gave you?
> A: Said that one of the girls that was there was in drug court and another one was driving a purple – a maroon-colored Bronco/Blazer type SUV, and I knew who that was.
> Q: Were those both females?
> A: No, one was a male, which was Maurice Head, the other one that pled guilty on his case, and the other one was a female. . . .
> Q: So the informant didn't mention [Defendant] Mr. Richards at all?
> A: Nope, did not.
> Q: So you don't even know whether Mr. Richards was present at the time the informant called you?
> A: No, I don't. . . .
> A: What [the informant] said was, "I saw a drug deal going down *between Trent [Covington] and the guy in the purple truck, who I figured out was Maurice [Head]*."

(Emphasis added). The informer's singling out of Covington and Head as the parties to the criminal behavior renders this case distinguishable from Pringle and factually closer to Di Re.

We conclude that under the circumstances presented in this case, there was no individualized and particularized probable cause supporting a warrantless search of the Defendant, and the officers did not have probable cause to believe that the Defendant had committed a criminal offense. The Defendant did not commit a public offense or a breach of the peace in the officers' presence; therefore, Tennessee Code Annotated section 40-7-103(a)(1), providing that "[a]n officer may, without a warrant, arrest a person: (1) For a public offense committed or a breach of the peace threatened in the officer's presence" is inapplicable here. As

we have noted, the police officers did not observe the Defendant engaging in suspicious or illegal conduct prior to the search. The citizen informant's tip that a "drug transaction" had occurred did not attach to the Defendant because the informant did not identify the Defendant as a participant.[5] Further, we have stated that "[o]ne's mere presence in an area where drugs are discovered, or one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); see also State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). We are not willing to assume that the Defendant, who was not singled out by the informant and was not observed by the officers to have been engaging in any criminal conduct, was in possession of narcotics and subject to warrantless arrest merely because he, along with three other people, was seated at a table upon which there was a dusting of cocaine residue. Because the officers lacked probable cause to believe that the Defendant had committed an offense, the search was not permissible as incident to a lawful arrest.

The warrantless search was invalid for the second reason that the evidence in the record fully supports the conclusion that the Defendant was placed under arrest only because the second search of his person yielded narcotics. Although the officers had more reason to believe that the *other* suspects were involved in criminal activity (e.g., the citizen informant's specific identification of Covington and Head in the tip, Head's action of sweeping the table clean and his possession of the corner baggie and dollar bill with cocaine residue on one end, and the powder in Covington's chair), Head and Covington were not arrested and taken into custody like the Defendant. Indeed, the testimony shows that if the officers considered anyone to have been in the constructive possession of the cocaine residue on the table, it was *Head*, not the Defendant, as Officer Rose testified:

> Q: At the time you lifted Mr. Covington out of his chair, had Mr. Head been arrested?
> A: I don't believe at that point in time anybody had been arrested. The investigation was still going on.
> Q: So he wasn't in custody or anything, he was just sitting there, Mr. Head?
> A: I'm not sure if Mr. Head had been placed in cuffs at that point in time or not.
> Q: Okay.
> A: Once we found the residue and it was field tested on the table and came back positive for cocaine, I know that then he was placed into custody and handcuffed.
> . . .
> A: I believe that after [the powder residue] was field tested positive, Mr. Head was placed in handcuffs for a brief moment. He was written a misdemeanor citation and let go.

Thus, the record demonstrates that the officers did not have probable cause to subject the Defendant to a full custodial arrest based on the scant evidence known to the officers before the

---

[5] Although the trial court's memorandum opinion erroneously states that "[t]he informant identified Mr. Covington as being at the picnic table and described three others who were accompanying him," the officers' testimony is clear that the Defendant was not identified, described, or singled out in any way by the informant.

search, and that the officers subjected the Defendant to a full custodial arrest because of the fruits of the warrantless search of his person.

## Conclusion

In sum, we hold that the warrantless search of the Defendant was not valid. A warrantless search incident to a lawful arrest may not be conducted unless the facts, circumstances, and reliable information known by the officers will support a prudent person's belief that the defendant has committed an offense for which a full custodial arrest is permitted. In this case, the officers lacked probable cause to believe that the Defendant had committed such an offense. Where, as here, the question of probable cause is close, our holding ensures that whenever possible, the permissibility of a search will be determined by a neutral magistrate rather than by the officers conducting the investigation, thus vindicating the strong presumption against warrantless searches. Accordingly, the judgment of the Court of Criminal Appeals dismissing the indictment is affirmed. Costs of this appeal are taxed to the appellant, State of Tennessee.

_____
SHARON G. LEE, JUSTICE