# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 12, 2014 Session

## STATE OF TENNESSEE v. JACQUELINE M. HIYAMA

### Direct Appeal from the Circuit Court for Williamson County
#### No. II-CR047192    James G. Martin, III, Judge

_____

### No. M2013-01838-CCA-R3-CD - Filed June 17, 2014

_____

The appellant, Jacqueline M. Hiyama, was indicted on alternative counts of driving under the influence (DUI) pursuant to Tennessee Code Annotated section 55-10-401(a)(1) and (a)(2). She filed a pretrial motion to suppress all evidence obtained as a result of her arrest, asserting that the arresting officer did not have reasonable suspicion to stop her vehicle. The trial court denied the appellant's motion. The appellant pled guilty to the indicted offense reserving a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) concerning whether the stop of the appellant's vehicle by law enforcement was lawful. After review, we conclude that the trial court did not err in denying the appellant's motion to suppress and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

David M. Rich, Nashville, Tennessee, for the appellant, Jacqueline M. Hiyama.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Kim R. Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On April 8, 2013, a Williamson County Grand Jury returned an indictment charging the appellant on count one with driving under the influence (DUI) and on count two with

DUI, per se. Thereafter, the appellant filed a motion to suppress the evidence gathered from the stop, asserting that the officer did not have reasonable suspicion to stop the appellant.

Trooper Charles Achinger testified at the suppression hearing that he had been a state trooper for nine years and had been trained in DUI detection and investigation. At 3:19 a.m. on October 28, 2012, Trooper Achinger was traveling north on Interstate 65 in a four-lane section of the highway. He was driving in the second lane to the right. The only other traffic was a vehicle that was in the same lane, approximately one-half mile ahead of him. The vehicle appeared to be drifting or swerving. Trooper Achinger increased his speed, and when he got closer, he observed the vehicle swerve to the left and briefly touch the white dotted line before correcting into its own lane of travel. The vehicle's tires did not completely cross the dotted line. As the vehicle traveled past Concord Road on a right-bending curve, it crossed over the right dotted line into the adjacent lane, corrected, again touched the dotted line, then again corrected into its lane of travel. Trooper Achinger estimated that the vehicle drifted to the right for approximately seven seconds. Finally, on a larger, left-bending curve, the vehicle "cut the curve." Trooper Achinger explained that both of the vehicle's left tires completely crossed over the dotted line into the adjacent left lane for a brief period before correcting into its lane of travel. Trooper Achinger initiated the traffic stop because of the vehicle's failure to maintain its lane of travel. Trooper Achinger said that the vehicle pulled over approximately one and one-half miles after he activated his blue lights.

Trooper Achinger said that he approached the vehicle and identified the appellant as the driver. Two passengers were traveling with her. Trooper Achinger smelled alcohol and observed that both passengers were highly intoxicated. He asked the appellant to step out of the vehicle so that he could locate the source of the odor. Following the appellant's exit, he discerned that the smell of alcohol was coming from her, and he asked her to perform field sobriety tests. The appellant performed poorly, and Trooper Achinger placed her under arrest.

Trooper Achinger said that his police cruiser was equipped with a video camera, which began recording when he activated his blue lights. The State introduced the video recording into evidence. Trooper Achinger said that the video was accurate but that it did not show his initial observations of the vehicle's drifting outside the lane prior to activation of the blue lights.

On cross-examination, Trooper Achinger acknowledged that at the preliminary hearing, he did not mention seeing the vehicle weaving or drifting outside the lane prior to the activation of the video. At the time the recording began, he was driving approximately one hundred miles per hour. He asserted that the appellant was not speeding and that he stopped her for failing to maintain her lane of travel. Trooper Achinger said that the

appellant drove "fairly straight" on the "straight-a-ways." He asserted that the appellant's failure to maintain her lane of travel carried with it the "high possibility of an accident happening." Nevertheless, he acknowledged that the only other vehicle was "very, very far ahead of [the appellant]."

At the conclusion of the proof, the appellant argued that the video showed that her driving was not erratic and did not establish reasonable suspicion for the traffic stop. The appellant further argued that the trial court should consider only the video in order to make its ruling, citing State v. Binette, 33 S.W.3d 215 (Tenn. 2000). The appellant argued that Trooper Achinger's testimony at the suppression hearing was inconsistent with the video and with his testimony at the preliminary hearing. The State countered that the instant case was factually distinguishable from Binette and that if the trial court accredited Trooper Achinger's testimony, it would find that he had reasonable suspicion to stop the vehicle.

The trial court agreed with the State. It noted that the video was "simply evidence that the [c]ourt finds to be credible based on the testimony of Trooper Achinger." The court accepted Trooper Achinger's testimony that his initial observations of the appellant's vehicle drifting within its lane occurred before the video began recording and that he observed the vehicle cross lanes on two occasions. The trial court thus found that Trooper Achinger had reasonable suspicion for the stop based on articulable facts evidenced by his "personal observations as confirmed by the video" and denied the appellant's motion.

On July 23, 2013, the appellant entered a plea of guilty, properly reserving the following certified question for appeal pursuant to Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure:

> Was the stop and detention of [the appellant] lawful under the 4th and 14th Amendments to the U.S. Constitution and Art. 1 Sect. 7 of the Tennessee State Constitution, by the State of Tennessee demonstrating that either a reasonable suspicion or probable cause existed that a crime was being committed by [the appellant] sufficient to justify the warrantless stop, search, and seizure of [the appellant]?

## II.  Analysis

The appellant, citing State v. Binette, 33 S.W.3d 215 (Tenn. 2000), argues that the video evidence contradicts Trooper Achinger's testimony and shows that he did not have reasonable suspicion to stop her. The appellant contends, therefore, that this court should

utilize a de novo standard of review without a presumption of correctness to determine whether Trooper Achinger had reasonable suspicion to effectuate the stop. We disagree.

Our supreme court has cautioned that Binette only applies "when a court's findings of fact at a suppression hearing are based *solely* on evidence that does not involve issues of credibility." 33 S.W. 3d at 217 (emphasis added). Because trial "courts are uniquely positioned to observe the demeanor and conduct of witnesses," the deferential standard of review described in State v. Odom, 928 S.W.2d 18 (Tenn. 1996), is appropriate when the credibility of a witness is at issue. Binette, 33 S.W.3d at 217. In Binette, the only evidence presented by the State was a dashboard recording of the defendant's driving; the State did not present testimony from any witnesses. Id. at 216. Therefore, the de novo standard was appropriate. Id. at 217.

In this case, the trial court relied upon more than just the video recording in making its factual findings and denying the appellant's motion. Trooper Achinger testified not only about the events preserved by the video recording but also about his initial observations of the appellant, which were not captured by the dashboard camera recording. Moreover, the trial court specifically accredited Trooper Achinger's testimony in its ruling. The trooper's testimony created issues of credibility for the trial court and placed this case outside the purview of Binette. Therefore, we review the trial court's suppression decision under the deferential Odom standard. See State v. Garcia, 123 S.W.3d 335, 342-43 (Tenn. 2003).

The Odom standard entrusts trial judges with resolving issues of witness credibility, weighing and valuing evidence, and resolving conflicts in the evidence. 928 S.W.2d at 23. Therefore, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. The "prevailing party in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence" State v. David Dwayne Bell, __ S.W.3d __, No. E2011-01241-SC-R11-CD, 2014 WL 644502, at *3 (Tenn. at Knoxville, Feb. 20, 2014). However, appellate courts will review questions of law and the trial court's application of the law to the facts de novo without according any presumption of correctness to the trial court's conclusions. State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens against "unreasonable searches and seizures." In general, warrantless searches and seizures are presumptively unreasonable and any evidence obtained as a result of the warrantless action is subject to suppression. State v. Richards, 286 S.W.3d 873, 878 (Tenn. 2009). However, if the state "demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant

requirement," the evidence will not be suppressed. State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998). One of the exceptions is met when a law enforcement officer temporarily seizes a citizen if the officer "has a reasonable suspicion, based on specific an articulable facts, that a criminal offense has been, is being, or is about to be committed." Id. Therefore, as stated in the certified question, the issue here is whether Trooper Achinger had reasonable suspicion that the appellant was committing or had committed a crime.

While impossible to precisely define, "reasonable suspicion" has been recognized as "'common sense, nontechnical conceptions'" dealing "'with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.'" Keith, 978 S.W.2d at 867 (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, an officer's "inchoate and unparticularized suspicion or hunch" is not sufficient reasonable suspicion. State v. Day, 263 S.W.3d 891, 907 (Tenn. 2008) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)) (internal quotations omitted).

Analyzing "whether reasonable suspicion existed in a particular traffic stop is a fact-intensive and objective analysis." Garcia, 123 S.W.3d at 344. In determining whether an officer had reasonable suspicion, "a court must consider the totality of the circumstances." Id. "'[R]easonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.'" Keith, 978 S.W.2d at 866 (emphasis omitted) (quoting State v. Pulley, 863 S.W.2d 29, 32 (Tenn. 1993)). Reasonable suspicion does not require "'proof of wrongdoing,'" but it does require some "'minimal level of objective justification for making the stop.'" Id. at 867 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

In this case, the record does not preponderate against the trial court's factual findings regarding reasonable suspicion. Trooper Achinger testified that he first saw the appellant's vehicle drifting within its own lane, that he increased his speed to take a closer look, and that he activated his cruiser's dashboard camera. After he reduced the distance between his cruiser and the appellant's vehicle, he saw the appellant fail to maintain her lane of travel on two occasions, first drifting into the lane to its right, then to the left. The trial court found that the appellant's vehicle was "either on or across the lane demarcation line on two occasions for a significant period of time."

The trial court not only accredited Trooper Achinger's testimony but also reviewed the dashboard video recording. It found that the trooper's "personal observations [were] confirmed by the video" and that this evidence supported a basis for the stop. We agree with the trial court that the video evidence does not contradict Trooper Achinger's testimony that he had reasonable suspicion to believe that the appellant was violating Tennessee Code

Annotated section 55-8-123, which requires that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane."

### III.  Conclusion

Based upon our review, we affirm the judgment of the trial court.


_____
NORMA McGEE OGLE, JUDGE