IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 2, 2021 Session

**STATE OF TENNESSEE v. KENTREL NE'AIR SINER**

**Appeal from the Circuit Court for Hardin County**
**No. 19-CR-115      C. Creed McGinley, Judge**
_____

**No. W2020-01719-CCA-R3-CD**
_____

A jury convicted the Defendant, Kentrel Ne'Air Siner, of simple possession of oxycodone, simple possession of marijuana, and possession of a firearm after having been convicted of a felony crime of violence, and he received an effective ten-year sentence. The convictions were the result of a search of the vehicle in which the Defendant was a passenger and the discovery of marijuana and oxycodone in the center console, a marijuana cigarette on the passenger floorboard, and a weapon under the passenger's seat. On appeal, the Defendant challenges the sufficiency of the evidence, arguing that there was nothing beyond proximity to tie him to the items recovered. After a thorough review of the record, we conclude that the evidence is insufficient to uphold his convictions for possession of oxycodone and possession of a firearm after having been convicted of a felony crime of violence, and these convictions are reversed and the charges dismissed. The conviction for simple possession of marijuana is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Reversed in Part; Affirmed in Part**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

M. Todd Ridley (on appeal), Assistant Public Defender – Appellate Division; Robert Gardner (at trial), District Public Defender; and Frankie K. Stanfill (at trial), Assistant Public Defender, for the appellant, Kentrel Ne'Air Siner.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker and Andrew C. Coulam, Senior Assistant Attorneys General; Matthew F. Stowe, District Attorney General; and Vance W. Dennis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was sitting in the front passenger's seat of a vehicle that was stopped for speeding. A search of the vehicle revealed oxycodone pills and marijuana in the center console, money in a small purse backpack in the front passenger area, a marijuana cigarette on the floor of the front passenger area, and a loaded firearm under the front passenger's seat. Ms. Portia Atkins, who was driving the vehicle, and Ms. Isabella Smotherman, the backseat passenger, were charged in separate indictments with offenses related to the traffic stop. The Defendant was charged with possession of oxycodone with intent to deliver; possession of marijuana; unlawful possession of a firearm after having been convicted of a felony crime of violence; unlawful possession of a firearm after having been convicted of a felony; and possession of a firearm during the commission of the dangerous felony of possession of oxycodone with intent to deliver. Prior to trial, the State dismissed Count 4 charging the Defendant with unlawful possession of a firearm after having been convicted of a felony. The State's proof consisted of testimony regarding the items recovered and video of the traffic stop. The defense introduced evidence that the pills were legally prescribed to Ms. Atkins's mother and argued that the State could not establish the Defendant's constructive possession of items that were hidden from plain view in a vehicle in which he was merely a passenger.

At trial, Corporal Justin Barker of the Savannah Police Department testified that on January 20, 2019, he initiated a traffic stop of a Nissan Altima for speeding. Corporal Barker recognized the Defendant and believed the Defendant had an outstanding warrant for his arrest. Corporal Barker stated that he could smell the scent of what he believed to be marijuana coming from the vehicle. Officer Robert Stewart, who responded to the scene, confirmed that he smelled marijuana coming from the car. Officer Stewart agreed that he had a K-9 with him but testified that he did not use the dog because he was able to detect the odor himself.

Corporal Barker placed the Defendant into custody and removed the other occupants with the help of other officers, and he searched the vehicle. In the center console, underneath a pile of paperwork, he found ten prescription pills and a small bag of marijuana. He testified that he found a backpack with money inside it in the front passenger area. He also found a marijuana cigarette on the front passenger's side floorboard. Underneath the front passenger's seat and within reach of the front passenger, he found a loaded nine-millimeter firearm. After the search, all of the vehicle's occupants were arrested. The Defendant's mother arrived shortly after the initiation of the traffic stop, and she told Corporal Barker that the Defendant had money belonging to her. Corporal Barker testified that, while the Defendant was in the back of the patrol car, he asked if he could give Ms. Atkins, his girlfriend, a kiss.

- 2 -

A video from Corporal Barker's body camera was played. The video showed that the traffic stop took place while it was dark, and the time according to the video was around 10:00 p.m. After pulling over, Ms. Atkins explained that she was speeding to catch up to a vehicle which had backed into her at a gas station and then driven away. She showed the damage to her vehicle caused by the hit-and-run. The video showed Corporal Barker return to his vehicle to try to get confirmation regarding outstanding warrants for the Defendant's arrest. He removed the Defendant from the vehicle and then removed the other occupants to search the vehicle. The video showed Corporal Barker remove numerous papers from the console before he located the pills and marijuana. Corporal Barker then looked through the backpack and removed some quantity of cash. The discovery of the handgun and discovery of the marijuana cigarette were not visible due to the camera angle and lighting.

On cross-examination, Corporal Barker acknowledged that no K-9 was used to detect drugs, even though a K-9 officer was at the scene. He explained he was able to smell marijuana himself. He agreed that the pills in the console were prescribed to Ms. Christy Shields and that the bottle matched the pills inside. Likewise, he agreed that Ms. Atkins told police that the pills belonged to a relative. He testified that the pill bottle stated that the prescription was for twenty-four pills and that ten pills remained. The prescription had been filled two days prior to the stop. Corporal Barker agreed that Ms. Atkins reached across the Defendant multiple times to retrieve items from the glove box and that both the driver and backseat passenger could reach the console. He never saw a sale of drugs take place. Regarding the marijuana cigarette, Corporal Barker was asked, "And how were you able to identify that that was marijuana in this cigarette?" He responded, "All the evidence of illegal narcotics were sent to the lab." Corporal Barker further testified that he did not have the lab report.

Corporal Barker did not attempt to retrieve fingerprints from the gun. He was able to confirm that the gun was not stolen but was unable to identify the owner "by running the serial number." He agreed that it was possible for the backseat passenger to reach the gun. He did not see anyone, including the Defendant, reach under the seat during the traffic stop. He agreed that the Defendant was speaking on the telephone during the bulk of the stop.

Corporal Barker did not take the bag in which the cash was found into evidence. He stated it remained in the vehicle and was released to the vehicle's owner. Defense counsel, having referred to the bag as a "backpack purse," clarified with Corporal Barker that Corporal Barker was referring to the item as a "backpack." Corporal Barker agreed that he had described the item as a backpack, stating that the bag had shoulder straps, which he described as "thin, but…they were shoulder straps to wear on your shoulders." Asked if it could be used as a "purse backpack" he said, "whether they use it as a purse or

as a backpack, it's really up to the person, no matter what the sex is." He agreed that nothing in the bag connected the Defendant to the bag. Corporal Barker testified that multiple people claimed the cash. He elaborated that the Defendant's mother said it was her money, "Then later, it wasn't their money and then it was her, Ms. Portia Atkins['s], and then it wasn't." According to Corporal Barker, the cash was in the possession of police, in a bank. He did not bring the cash to court. No evidence was introduced regarding the amount of cash in the bag.

Corporal Barker could not remember if, during a portion of the video that had been skipped, dispatch had failed to confirm that there was an outstanding warrant for the Defendant's arrest. After watching part of the skipped portion, he agreed that dispatch did not confirm the warrant. He testified that he may have been told of the warrant through his earpiece. He stated he would have verbally acknowledged the transmission but agreed there was no audible verbal acknowledgement in the video prior to him placing the Defendant in handcuffs.

Corporal Barker testified that he assumed he completed a report for the hit-and-run. He agreed there was a dent in Ms. Atkins's vehicle, but he did not know if it occurred that night. The vehicle was ultimately released to Ms. Atkins's relative.

Special Agent Carter Depew of the Tennessee Bureau of Investigation ("TBI") testified that he tested the bag with 6.72 grams of plant material and identified it as marijuana. The pills were presumptively identified through markings as ten oxycodone tablets. On cross-examination, Special Agent Depew stated he did not test the cigarette but only the plant material in the plastic bag. He acknowledged that at the time of testing, he would not have been able to determine if the substance was hemp or marijuana and stated that the TBI can now determine the difference. He testified that the pills were oxycodone with acetaminophen and were used as a pain reliever.

Ms. Johnna Pippin, the Deputy Clerk of Hardin County Circuit Court, identified a certified copy of a judgment convicting the Defendant of burglary of a building other than a habitation which took place in 2017. On cross-examination, she identified the indictment from the case, which specified that the theft was of $100 and that the victim was Summertime Sno.

Ms. Christy Shields, Ms. Atkins's mother, testified for the defense about the pills in the console. She stated that she had had a hysterectomy on the Friday prior to the arrests and that she was sent home with "a lot of medication." Ms. Atkins filled Ms. Shields's prescriptions at the Walmart pharmacy. Ms. Shields identified the pill bottle from the car as belonging to her. She remained in bed from Friday to the Sunday of

traffic stop two days later.  Ms. Shields testified that Ms. Atkins drove a vehicle belonging to Ms. Shields's mother.

Ms. Shields explained the presence of the bottle in Ms. Atkins's car and the number of pills in the bottle.  She stated that she had consumed some of the pills and that the bottle must have fallen out of a bag in the car.  Ms. Shields testified that she only had enough money to purchase half the pills initially and that Ms. Atkins had gone back to get the other pills.  Ms. Shields testified that she had initially picked up ten pills and that Ms. Atkins returned to get the other fourteen.  She explained that she then took four of those fourteen pills.  She elaborated that the pills were in her house, that she took four of them, and that Ms. Atkins "took the whole bag," after which the bottle fell out in the car and Ms. Atkins called Ms. Shields to tell her she found the pills on her floorboard.  Ms. Shields testified she was supposed to take the pills every four to six hours "but I'll take them just whenever I feel like I just – honestly, I probably take too many."  Ms. Shields stated that Ms. Atkins would "take my pills to keep me from taking too many."

Ms. Shields stated that she was not really acquainted with the Defendant, who had dated her daughter, and did not know "why they would think he was near my pills."  She stated it was a source of stress to her that the occupants of the car had been charged with possession with intent to sell her medication and that she had been "trying to speak with someone" for a year to explain that she was legitimately prescribed the pills.

A document from the pharmacy was introduced into evidence.  It indicated that the oxycodone and acetaminophen pills were prescribed to Ms. Shields on January 18, 2019.  The prescription was filled on the same date, and twenty-four pills, which constituted a four days' supply, were dispensed for $16.53.  The traffic stop took place on January 20, 2019.  Ms. Shields acknowledged that the printed form did not reflect that only half of the prescribed pills were dispensed at a time and that the form showed the prescription was only filled once in 2019.

During closing argument, the State argued that the presence of oxycodone in the console was uncontroverted, as were the presence of marijuana with the oxycodone, cash in the backpack, and a handgun under the seat.  It argued that the Defendant was in constructive possession of the items in the car.  The defense noted that the pills were legally prescribed to Ms. Shields and that the twenty-four pills were a four days' supply.  The defense argued that there was nothing connecting the Defendant to the backpack purse and no proof that he knew about the drugs or weapon.

The jury convicted the Defendant of the lesser included offense of possession of oxycodone in Count 1, possession of marijuana as charged in Count 2, and possession of a firearm after having been convicted of a crime of violence in Count 3.  He was

acquitted of the firearms charge in Count 5. The trial court, finding one enhancement factor, sentenced the Defendant to ten years for the weapons offense and to eleven months and twenty-nine days for the drug offenses. All of the sentences were to be served concurrently with each other and with his prior burglary sentence. The Defendant appeals the convictions, arguing that the evidence is legally insufficient to establish that he possessed the items in the vehicle.

## ANALYSIS

The Defendant challenges the sufficiency of the evidence. On appeal, this court must set aside a finding of guilt if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). The question before the appellate court is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). This court will not reweigh or reevaluate the evidence, and it may not substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The trier of fact is entrusted with determinations concerning witness credibility, factual findings, and the weight and value of evidence. *Smith*, 436 S.W.3d at 764. In reviewing the sufficiency of the evidence, we afford the State the strongest legitimate view of the evidence and all reasonable inferences that can be drawn from the evidence. *State v. Hawkins*, 406 S.W.3d 121, 131 (Tenn. 2013). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury." *Reid*, 91 S.W.3d at 277. "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The Defendant was convicted of three offenses requiring the State to establish his possession of contraband. "It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." T.C.A. § 39-17-418(a) (2019). To sustain the convictions for possession of oxycodone and marijuana, the State had to establish that the Defendant possessed the controlled substances and that his possession was knowing. The Defendant was also convicted of a firearms offense. "A person commits an offense who unlawfully possesses a firearm, as defined in § 39-11-106, and … [h]as been convicted of a felony crime of violence…." T.C.A. § 39-17-1307(b)(1)(A) (2019). A "crime of violence"

includes burglary. T.C.A. § 39-17-1301(3) (2019). Accordingly, the State had to show that the Defendant possessed the firearm and that he acted recklessly, knowingly, or intentionally. *See* T.C.A. § 39-11-301(c).

Possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession is "'the ability to reduce an object to actual possession.'" *State v. Transou*, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996) (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)). "If possession is deemed to be constructive, there must be proof that the accused had 'the power and intention at a given time to exercise dominion and control over ... [the contraband] either directly or through others.'" *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (quoting *Shaw*, 37 S.W.3d at 903). Mere presence in the vicinity of the contraband is not, alone, sufficient to support a finding of constructive possession. *State v. Richards*, 286 S.W.3d 873, 881 (Tenn. 2009) (citing *Shaw*, 37 S.W.3d at 903). Neither is "'mere association with a person who does in fact control the drugs or property where the drugs are discovered.'" *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991) (quoting *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). When the defendant is "'not in exclusive possession of the place where the [contraband] is found, additional incriminating facts and circumstances must be presented' that 'affirmatively link the accused'" to the contraband in order to raise a reasonable inference of possession. *State v. Jason Collins*, No. W2019-01415-CCA-R3-CD, 2020 WL 1972612, at *5 (Tenn. Crim. App. Apr. 24, 2020), *perm. app. denied* (Tenn. Sept. 21, 2020) (quoting *Richards*, 286 S.W.3d at 885 (Koch, J., dissenting)). Constructive possession is evaluated in light of the totality of the circumstances and may be proven by circumstantial evidence. *Robinson*, 400 S.W.3d at 534 (citing T.C.A. § 39-17-419). Possession may be exercised solely or jointly with others. *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Whether possession is knowing is generally shown by inference and circumstantial evidence. *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995).

When the defendant is charged with possession of contraband located in a vehicle, "[k]nowledge may be inferred from control over the vehicle in which the contraband is secreted." *Id.* In *State v. Brown*, this court concluded the evidence was sufficient to establish the defendant's constructive possession of the drugs when the defendant was the owner and driver of the vehicle from which drugs were thrown, he knew the passenger, and he was in an area known for drug transactions. *Id.* at 8.

Accordingly, this court has upheld convictions based on constructive possession when the defendant was the owner or driver of the vehicle. *State v. Gregory Gill*, No. W2018-00331-CCA-R3-CD, 2019 WL 549651, at *10-11 (Tenn. Crim. App. Feb. 11, 2019) (the driver of a rental vehicle containing over $1,000 worth of drugs constructively

possessed the drugs when he was apprehended after letting a passenger out, parking, and entering a mall); *State v. Kenneth L. Davis*, No. W2008-00226-CCA-R3-CD, 2009 WL 160927, at *6 (Tenn. Crim. App. Jan. 23, 2009) (evidence was sufficient despite the defendant's testimony that the contraband belonged to the passenger, because the defendant owned and was driving the vehicle and the contraband was within his reach); *see also State v. Lonnie Walter Hurd*, No. E2002-00832-CCA-R3-CD, 2003 WL 22303083, at *4 (Tenn. Crim. App. Oct. 8, 2003) (evidence was sufficient to establish constructive possession when the passenger, who acknowledged her possession of the drugs, had given the defendant control over the car by asking him to drive, the passenger was closely acquainted with the defendant, the passenger was a known drug dealer, the defendant was under the influence of drugs, and the car smelled of marijuana).

Furthermore, "when another person is committing visibly criminal acts in the presence of the accused, 'then the chances are substantially greater that a companion of the offender is something more than a mere bystander.'" *Richards*, 286 S.W.3d at 886 (Koch, J., dissenting) (quoting 2 Wayne R. LaFave, *Search and Seizure* § 3.6(c), at 348 (4th ed. 2004)). When the contraband is in a location under the control of multiple persons, "incriminating circumstances other than the defendant's mere occupancy, ownership, or presence have contributed to findings of sufficient evidence of constructive possession," and these circumstances include the open and obvious nature of the contraband. *State v. Gloria A. Porter*, No. W2004-02464-CCA-R3-CD, 2005 WL 2333569, at *4 (Tenn. Crim. App. Sept. 21, 2005).

Accordingly, when evidence established that the defendant knew about the presence of the contraband, this court has found sufficient evidence for constructive possession. *See State v. Sangria Venturia Baker, Jr.*, No. W2018-00732-CCA-R3-CD, 2019 WL 2404977, at *5 (Tenn. Crim. App. June 7, 2019) (evidence was sufficient to establish constructive possession when a large quantity of marijuana was in plain view on the front floorboard of the defendant's mother's car, which he was driving, even though a passenger was sitting near the drugs); *State v. Justin Bradley Haynie*, No. W2006-01840-CCA-R3-CD, 2007 WL 4335481, at *14 (Tenn. Crim. App. Dec. 7, 2007) (all three defendants had constructive possession of the drugs when they "knew the location of the drugs inside the vehicle and had access to them," having previously used the drugs in the car and having put them into the console); *see also Robinson*, 400 S.W.3d at 534 (the evidence was sufficient to establish possession when the cocaine was within reach of the passenger, the passenger was observed to throw a small portion of the large quantity of cocaine into the back seat of the vehicle, and the passenger made statements from which his knowledge of the drug trade could be inferred); *Lonnie Walter Hurd*, 2003 WL 22303083, at *4 (noting that the odor of marijuana emanating from the vehicle, among other factors, supported constructive possession).

On the other hand, this court has found the evidence insufficient to support a finding of possession when there was no evidence that the accused knew about the contraband. *State v. Elpidio Valdez*, No. M1999-00791-CCA-R3-CD, 2001 WL 327994, at *5 (Tenn. Crim. App. Apr. 4, 2001) (the evidence was insufficient to show possession when a passenger was connected to drugs recovered from the gas tank only by "his money, his ambiguous demeanor, and the air fresheners"); *State v. James A. Jackson*, No. M1998-00035-CCA-R3-CD, 2000 WL 549295, at *11 (Tenn. Crim. App. May 5, 2000) (although the defendant was in control of the vehicle, had over one thousand dollars in cash, had a firearm and ammunition, and used drug slang, there was insufficient evidence connecting him to the drugs and scales inside a suitcase belonging to the passenger, who was the defendant's mere acquaintance).

In *State v. Silio Hilerio-Alfaro, Pablo Chavez, and Isidro Perez ("Hilerio-Alfaro")*, the defendant was in the passenger's seat, on his way to get a beer with the driver and the backseat passenger, when the vehicle was stopped and a large amount of cocaine and a gun were found underneath the liner of the center console. No. W2013-01819-CCA-R3-CD, 2014 WL 6483263, at *5 (Tenn. Crim. App. Nov. 19, 2014). The only evidence connecting the defendant to the contraband was testimony by an officer that he saw the driver and the defendant moving in the area of the console. *Id.* Although the driver claimed the weapon and the backseat passenger claimed the drugs, this court noted that reversal was not predicated on their testimony, which the jury clearly rejected. *Id.* Instead, this court reversed the conviction because it concluded that the State had failed to introduce evidence connecting the defendant to the hidden contraband. *Id.*; *see also United States v. Bailey*, 553 F.3d 940, 948 (6th Cir. 2009) (there was no evidence of a nexus showing the defendant had knowledge of, access to, or an intent to exercise control over the weapon when it was under the seat of the stolen car he was driving); *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976) (although the evidence was sufficient to link the owner of the vehicle and the driver to the guns in the trunk, a third defendant, who was merely present in the vehicle, was not in possession of the contraband); *see also United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (distinguishing cases on the basis that in *Arnold*, there was testimony that the defendant, who was in the passenger's seat under which the gun was found, had threatened someone with a gun matching the weapon's description immediately prior to the discovery of the weapon).

In the case at bar, the Defendant was a passenger in the vehicle belonging to Ms. Atkins's grandmother and driven by Ms. Atkins. The Defendant was dating Ms. Atkins at the time. There was no proof regarding how long the Defendant had been in the vehicle and no proof regarding whether the Defendant had ever exercised control over the vehicle. In the passenger's seat area, some amount of money was found in a bag that Corporal Barker acknowledged to be a hybrid between a purse and a backpack. Nothing

in the bag connected the bag to the Defendant, and the bag was released to Ms. Atkins's relative. The State introduced no proof regarding the quantity of cash found.

The Defendant was convicted of possession of a weapon found underneath the front passenger's seat. There was no attempt made to obtain fingerprints from the gun. Corporal Barker stated he did not establish the gun's ownership. The Defendant was neither the owner nor the driver of the vehicle, and the gun was not in plain view. Corporal Barker acknowledged that the Defendant never made any movements indicative of reaching under the seat. In short, there was absolutely nothing beyond the Defendant's physical proximity to the weapon to establish any kind of nexus of possession.[1] While these circumstances may establish probable cause to justify an arrest, *see Maryland v. Pringle*, 540 U.S. 366, 371-72 (2003), on reviewing the sufficiency of the evidence, we must determine whether a rational trier of fact could find possession beyond a reasonable doubt. We conclude that, under the cases cited above, a rational trier of fact could not have found beyond a reasonable doubt that the Defendant possessed the weapon when there was no evidence linking him to the weapon or suggesting that he was aware of its presence in the vehicle. *See Hilerio-Alfaro*, 2014 WL 6483263, at *5; *Bailey*, 553 F.3d at 948.

The Defendant was likewise convicted of possession of oxycodone as a lesser included offense of possession of oxycodone with intent to sell. The oxycodone was validly prescribed to Ms. Atkins's mother and consisted of a four days' supply, which had been filled two days prior to the stop and which was missing fourteen out of twenty-four pills.[2] The pills were in the center console of the vehicle, which we reiterate was neither owned nor driven by the Defendant, and they were underneath a pile of papers and other items. There was no evidence that the Defendant ever accessed the console, that he knew of the existence of the pills, or that the presence of a bottle of prescription

---

[1] The prosecutor noted certain portions of the video that were omitted when it was played for the jury, but it is not clear when the video, which is an hour long and proceeds to show the parties chatting during intake at the jail, was stopped. The last event referenced by testimony was the Defendant's request from the patrol car to give his girlfriend a kiss. Approximately eight minutes later in the video, Corporal Barker told the Defendant's mother that a gun had been found under the Defendant's seat, and the Defendant's mother expressed surprise about the gun and stated that the Defendant had been the victim of an attempted murder.

The State cites to the fact that the Defendant's mother referenced a gun without noting that the statement was not spontaneous but in response to Corporal Barker's prior statement that a gun was found. In any event, the Defendant's mother's surprise that a gun was found and her statement that the Defendant had been the victim of an attempted murder are not sufficient to link the Defendant to the weapon.

[2] The State's argument that the bottle was "missing too many pills" is contrary to the prescription information that the pills were a four days' supply which had been filled two days prior to the stop.

medication was in some way obviously unlawful. The pills were in a small quantity and not in plain view. Beyond the Defendant's presence, the State failed to introduce any incriminating circumstances which connected the Defendant to the pills. *See Jason Collins*, 2020 WL 1972612, at \*5; *Gloria A. Porter*, 2005 WL 2333569, at \*4; *see also State v. Christopher Rutherford*, No. W2012-01723-CCA-R3-CD, 2013 WL 6254675, at \*5 (Tenn. Crim. App. Dec. 3, 2013) (distinguishing "a situation where a passenger was merely present inside a car in which drugs were discovered and merely associated with a person who did in fact control the drugs"), *abrogated on other grounds by State v. King*, 432 S.W.3d 316 (Tenn. 2014). We conclude that this conviction is likewise not supported by sufficient evidence to allow a rational trier of fact to conclude beyond a reasonable doubt that the Defendant constructively possessed the pills.

The Defendant was also convicted of simple possession of marijuana. Corporal Barker testified that he discovered a small bag of marijuana in the center console of the vehicle underneath the same pile of papers and other items and that he also found a marijuana cigarette on the floorboard of the front passenger's area. In addition, both Corporal Barker and Officer Stewart testified that they could smell the scent of marijuana emanating from the vehicle.[3] The open and obvious nature of the contraband is an "incriminating circumstance[]" which may "contribute[] to findings of sufficient evidence of constructive possession." *Gloria A. Porter*, 2005 WL 2333569, at \*4; *see United States v. Washington*, 783 F.3d 1198, 1201 (10th Cir. 2015) (concluding that the smell of marijuana may have led to an inference of drug use or possession but was insufficient to support a conviction for distribution because quantity was not apparent from scent). In the light most favorable to the State, there was evidence that the vehicle smelled of marijuana and that a marijuana cigarette was located on the floorboard in the area in which the Defendant was sitting. When the proof is viewed in the light most favorable to the State, we conclude that the evidence regarding possession of marijuana, while certainly not overwhelming, is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that the Defendant was constructively in possession of the marijuana which officers smelled inside the vehicle.

The Defendant notes in his reply brief that the item Corporal Barker identified as a marijuana cigarette was not tested, and he notes that Special Agent Depew, while testifying that the substance in the bag was marijuana, acknowledged that at the time of testing, he could not distinguish marijuana from hemp. While Special Agent Depew's concession certainly weakens the State's case, the evidence included testimony from Special Agent Depew that the substance was in fact marijuana, testimony from the police

---

[3] The State, in arguing the evidence was sufficient, cites to a portion of the video where Ms. Atkins speculates that the marijuana smell was emanating from the Defendant, but the record reflects that this portion of the video was not played for the jury.

officers that the vehicle smelled of marijuana, and the plant material and cigarette which were submitted as exhibits at trial. The jury determined that the substance was marijuana, and this court will not reweigh or reevaluate this factual finding. *Smith*, 436 S.W.3d at 764. Accordingly, this conviction is affirmed.

## CONCLUSION

Based on the foregoing reasoning, the Defendant's convictions for simple possession of oxycodone and for possession of a firearm after having been convicted of a crime of violence are reversed and the charges dismissed. We affirm the conviction for simple possession of marijuana.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE