IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 3, 2024

## STATE OF TENNESSEE v. PAUL MICHAEL CHEAIRS

**Appeal from the Circuit Court for Madison County**
**No. 22-856   Joseph T. Howell, Judge**
_____

### No. W2024-00312-CCA-R3-CD
_____

Defendant, Paul Michael Cheairs, was convicted by a Madison County jury of two counts of possession of marijuana with intent to sell and or deliver, two counts of possession of drug paraphernalia, one count of misdemeanor unlawful possession of a firearm, and one count of possession of a firearm by a convicted felon.  The trial court imposed an effective sentence of seventeen years.  Defendant appeals, arguing that the evidence was insufficient to support his convictions and that the trial court erred in admitting a rap video made after the arrest, by allowing expert testimony from a lieutenant, and in sentencing.  Upon our review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Michael E. Scholl, Memphis, Tennessee (at sentencing and on appeal), and Hal Dorsey (at trial) for the appellant, Paul Michael Cheairs.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Jody Pickens, District Attorney General; and Michelle Pugh and Brandley F. Champine, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

On October 15, 2020, Jackson Police Department ("JPD") Officer Joseph Shephard[1] initiated a traffic stop of a silver Chrysler 200 for a suspected window tint violation in the parking lot of an apartment complex. Officer Shephard identified Defendant in court as the driver of the vehicle. Officer Shephard's body camera footage was admitted into evidence. When Defendant objected to a portion of the body camera video including Defendant's statement about his recent release from prison, the trial court ordered the State to mute that portion of the video. The video contained audio and video of the entire traffic stop, including the search of Defendant's vehicle.

Officer Shephard testified that upon approaching the vehicle, he immediately smelled the odor of marijuana. Defendant was the sole occupant of the vehicle. When asked how much marijuana was in the vehicle, Defendant retrieved a bag of green plant material from the area of the front passenger seat. Defendant "promise[d]" that the bag was the entirety of the marijuana in the vehicle. Officer Shephard collected the bag and Defendant's driver's license and registration and returned to his patrol car to report the stop, run Defendant's license through the NCIC database, and call for back-up so he could search the vehicle.

When Officer Shephard approached the vehicle again, Defendant was smoking a "marijuana blunt." Defendant denied that there was any more marijuana or a firearm in the vehicle. Officer Shephard explained that he was going to detain Defendant to search the vehicle, and, if the search did not reveal any other contraband, then he would "let [Defendant] go." Defendant then admitted that there was more marijuana in the vehicle and handed Officer Shephard a backpack with a marijuana leaf on the side of it. Officer Shephard then detained Defendant.

After another officer arrived on scene, Officer Shephard searched Defendant's vehicle. Photographs of the vehicle as it was searched were exhibited to his testimony. On the body camera footage, Officer Shephard could be heard telling the other officer that "this is probably the most weed I've ever got." Defense counsel requested a bench conference during which he asked that the volume on the body camera footage be muted except when Officer Shephard was talking to Defendant, arguing that all other statements were hearsay. The State responded that the statements were not being offered for their

---

[1] At the time of trial, Joseph Shephard was an employed by the United State Marshals Service. We will use his title at the time of the offense. Additionally, because Officer Shephard did not spell his name on the record, we will use the spelling as it is found on the body camera footage exhibit.

truth and that Defendant had previously filed a motion in limine with objectionable portions of the video but that he had withdrawn that motion. The trial court denied the request to mute the audio.

The photographs and video showed that in the front cup holder of the vehicle, there was an ashtray containing the partially smoked marijuana blunt. In the backpack, Officer Shephard found a black digital scale, a "cup with marijuana residue on it," twenty plastic sandwich bags, and two plastic bags that contained "a large amount of marijuana[.]" Officer Shephard also located a nine-millimeter FN firearm with an extended magazine containing twenty-five rounds of ammunition under the front passenger seat "[e]xtremely close" to where Defendant had retrieved the bag of marijuana. When Officer Shephard asked Defendant if there were any firearms in the vehicle, Defendant "turned and looked directly in the direction of the gun" and said, "Ain't got nothing but weed." Officer Shephard then placed Defendant under arrest. In the body camera footage, a man in a grey sweatshirt can be seen recording the arrest. Officer Shephard affirmed that Defendant told him that his cousin lived in the apartment complex where he stopped Defendant.

At trial, Officer Shephard identified a rap video posted by Defendant on YouTube on October 20, 2020, five days after the arrest. The video was introduced into evidence and a portion was played for the jury. The title of the rap video was "First Day Out," and the beginning of the video contained footage of Defendant's arrest in this case which appeared to have been taken by the man seen on Officer Shephard's body camera footage. Defendant was the performer in the video, and he rapped that, "first I need a pack of wood, some zaza, and a brand-new heat." He continued that he "got caught with my FN, about a pound, I should have hopped on feet." Officer Shephard reiterated that the firearm in the vehicle was an FN and that the backpack contained "just under a pound" of marijuana.

On cross-examination, Officer Shephard stated that Defendant denied ownership of the firearm and agreed that Defendant appeared surprised that the firearm was in his vehicle. He further agreed that "if somebody was sitting in the passenger seat, they might place [the firearm] under the seat like that" but maintained that it made "perfect sense" for Defendant to have placed the firearm under the seat because "[w]hen he is getting pulled over, all he has to do is reach over and put the gun under the front passenger seat. I've made . . . hundreds of stops and seen firearms under the passenger seat with the driver being the only person in the vehicle." Officer Shephard disagreed that rap lyrics were generally fictional because "you can definitely correlate some of the rap videos with news articles of crime that has taken place."

On redirect examination, Officer Shephard testified that his investigation showed that Defendant was a convicted felon prohibited from possessing a firearm. The State

- 3 -

introduced certified copies of Defendant's three prior convictions for aggravated robbery from 2013.[2]

Tennessee Bureau of Investigation Special Agent Rachel Strandquist, an expert in forensic chemistry, analyzed the plant material seized from Defendant. A copy of her lab report was exhibited to her testimony. Agent Strandquist explained that she tested only one bag because the second bag would not "bump it up over an additional weight threshold[.]" In the bag she tested, Agent Strandquist "identified this plant material as presumptive marijuana in the amount of" 206.25 grams. The other bag weighed 152.44 grams. Agent Strandquist explained that presumptive testing consists of four different tests: "a macroscopic test, a microscopic test, and then two color tests." Based on the microscopic and color tests, Agent Strandquist determined that the plant material was cannabis. Agent Strandquist explained that a "4-aminophenol test" presumptively determines whether the cannabis was marijuana or hemp based on "whether the ratio of Delta-9 THC, which is the active ingredient in marijuana, is greater than or less than CBD, which is the predominant cannabinoid in hemp. So, in this instance, the THC was greater than the CBD concentration, so its presumptively marijuana."

On cross-examination, Agent Strandquist agreed that there was additional chemical testing that could have conclusively determined whether the plant material was marijuana, but the State did not request the additional testing. She agreed that without the additional testing, she could not be certain whether the plant material was hemp or marijuana. She explained that it was "presumptively marijuana, and [she] can confirm that it's cannabis."

On redirect examination, Agent Strandquist explained that during her career, she had performed the additional chemical testing approximately "thirty or forty times" and the chemical testing confirmed her presumptive finding "[e]very single" time. Agent Strandquist stated that it was her expert opinion that the plant material was marijuana.

JPD Lieutenant Samuel Gilley was a special agent with the Twenty-Sixth Judicial Drug Task Force and had experience as a commander over JPD special operations in charge of the gang unit, metro narcotics unit and street crimes unit. He was tendered as an expert in illegal narcotics investigations and testified that he was familiar with the evidence against Defendant. He agreed that there are "certain indicators" present when a person is involved with illegal drug sales. He explained that in this case, "the sheer amount of marijuana alone, along with the presence of extra bagging materials, digital scales, and a weapon within the area of the drugs would indicate to [him] that these drugs were possessed

---

[2] While not an issue on appeal, we note that this court has previously determined that bifurcation of charges for the unlawful possession of a firearm by a convicted felon from other charged offenses is the better practice. *State v. Richardson*, No. W2016-02227-CCA-R3-CD, 2018 WL 821775, at *16 (Tenn. Crim. App. Feb. 9, 2018).

for resale." He testified that the amount of marijuana in Defendant's backpack could have been possessed for personal use but "there would be no reason for them carrying a scale that's small enough to measure out amounts . . . that you would sell to someone[.]" Lieutenant Gilley explained how each of the items found in the backpack would be used by a person selling marijuana and approximated the amount of money that could be made from selling the amount of marijuana Defendant possessed. Lieutenant Gilley explained that "most drug dealers that sell a large amount of drugs, are in the business of doing that as their day-to-day business, they are going to employ a firearm while they do that" to "defend themselves from . . . people that want to steal their drugs . . . [and] money."

In his experience, Lieutenant Gilley had never seen legal hemp "with packaging like this where someone has repackaged legal hemp into bags like this[.]" He had not known "weed" to refer to any substance other than marijuana. Based on all of the evidence and his experience, Lieutenant Gilley opined that Defendant possessed the marijuana with the intent to sell or deliver.

Lieutenant Gilley had watched Defendant's rap video. Over Defendant's objection, Lieutenant Gilley interpreted Defendant's rap lyrics explaining that "pack of woods" referred to the brand of cigars used to roll marijuana and that "should have hopped on feet" meant that Defendant should have run from police. He also explained that "zaza" was "slang for high-grade marijuana" and "'heat' is a gun." Defendant requested a bench conference in which he again challenged Lieutenant Gilley's interpretation of Defendant's rap lyrics, arguing that Lieutenant Gilley's "testimony 'brand-new heat means a gun' is way far afield from what he's been qualified as an expert for." Defendant requested a mistrial, which the trial court "[d]uly noted."

On cross-examination, Lieutenant Gilley agreed that it was not atypical for a person to possess one pound of marijuana for personal use but that due to the presence of the bags, scale, and firearm in this case, it was unlikely. It was his opinion that Defendant was "most likely trying to sell" the marijuana.

The State then rested its case, and the trial court denied Defendant's motion for judgment of acquittal.

Michael Smith, a friend of Defendant, testified that on the day of the offense, when Defendant picked him up from "a female's house," Mr. Smith had a firearm "on [his] hip." Defendant then drove to a store and went inside. Mr. Smith initially remained in the car but when he later decided to enter the store, he placed his firearm under the passenger seat because he did not "like to walk around with guns in stores." Defendant and Mr. Smith left the store, and Defendant drove Mr. Smith to his apartment. Mr. Smith affirmed that he lived in the apartment complex where Defendant was parked when he was arrested.

When Mr. Smith exited Defendant's vehicle, he forgot to retrieve his firearm from under the passenger seat. Mr. Smith did not realize that he had forgotten the firearm until after Defendant left, so he called Defendant to come back. Mr. Smith "didn't tell him what was in the car because [he] didn't want to hear [Defendant's] mouth about [him] leaving a gun in [Defendant's] car and knowing [Defendant is] a felon[.]" Defendant was pulled over and arrested before Mr. Smith could retrieve the firearm from the vehicle. Mr. Smith agreed that he was serving a three-year probated sentence for a felony offense at the time of Defendant's trial.

On cross-examination, Mr. Smith agreed that he did not have a felony record at the time Defendant was arrested; he had been convicted approximately a month after the offense date in this case. He agreed that he and Defendant had been friends for more than a decade.

Based on the above evidence, the jury convicted Defendant of possession of marijuana with intent to sell and deliver as charged in counts one and two, respectively ("the drug convictions"), possession of drug paraphernalia as charged in counts three and four, and unlawful possession of a firearm as charged in counts seven and eight ("firearm convictions"). The jury also affixed fines for each offense. The jury acquitted Defendant of possession of a firearm with the intent to go armed during the commission or attempt to commit a dangerous felony as charged in counts five and six.

At the sentencing hearing, Defendant's presentence report was entered into evidence. It showed that Defendant had a confirmed gang affiliation and two prior convictions for possession of less than 0.5 ounce of marijuana, three prior convictions for aggravated robbery, and various traffic offenses. Additionally, Defendant had received over forty infractions while incarcerated in the Tennessee Department of Correction ("TDOC"), which included "drugs and assault." No other evidence was received.

The trial court found that Defendant was a Range II offender and applied enhancement factor one, that Defendant had a history of criminal convictions or behavior in addition to those necessary to establish his range, citing Defendant's third conviction for aggravated robbery, two misdemeanor drug convictions, and over forty TDOC disciplinary infractions. *See* T.C.A. § 40-35-114(1). The trial court gave "slight weight" to mitigating factor one, that Defendant's conduct neither caused nor threatened serious bodily injury. *See id.* §-113(1) It noted its consideration of the "presentence report as a whole" including Defendant's gang affiliation. The trial court sentenced Defendant to two-year sentences for each of the drug convictions in counts one and two, which merged, to eleven months and twenty-nine days each for counts three, four, and seven, and to seventeen years for the count eight firearm charge. The trial court ordered all counts to run concurrently, for an effective sentence of seventeen years.

Defendant filed a timely motion for new trial, which was denied on February 8, 2024. Defendant's timely appeal is now properly before this court.

## I.  Admission of Defendant's Rap Video

Defendant argues that the trial court erred by admitting his rap video because it was irrelevant and, to the extent it was relevant, the video should have been excluded under Tennessee Rule of Evidence 403. The State asserts that the trial court properly admitted the video because it contained admissions by Defendant regarding the charges in "this very case." We agree with the State.

First, we note that in his brief, Defendant consistently challenges the admission of his rap video on an evidentiary basis. In one paragraph, Defendant asserts that to "allow rap lyrics to be used against a defendant at trial is a violation of the First Amendment's right to free speech and would have a chilling effect on how music is made and produced." However, Defendant's First Amendment argument was not raised in Defendant's motion for new trial or his amended motions for new trial or at the hearing on the motion for new trial. Tenn R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived[.]"); *State v. Avila-Salazar*, No. M2023-01649-CCA-R3-CD, 2024 WL 3738647, at *2 (Tenn. Crim. App. Aug. 9, 2024) (stating that a party cannot raise an issue for the first time or change their argument on appeal), *perm. app. denied* (Tenn. Jan. 23, 2025). To the extent Defendant raises a First Amendment challenge, the issue is waived.

Generally, relevant evidence is admissible. Tenn. R. Evid. 402. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* 401. However, a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" *Id.* 403. Unfair prejudice means "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Tenn. R. Evid. 403, Advisory Comm'n Comment)).

This court reviews a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *Id.* Mere disagreement with the trial court is insufficient to disturb the trial court's evidentiary decisions. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). A trial court abuses its discretion when it "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010).

Here, Defendant's rap video was directly relevant to whether Defendant possessed the firearm and whether the plant material was marijuana. As this court recently stated, "[r]ap lyrics are more likely to be found probative and admitted at trial when they mirror the charged crime(s) or describe activity that resembles aspects of the central crime(s) alleged." *State v. Britton*, No. M2023-01779-CCA-R3-CD, 2025 WL 88338, at *21 (Tenn. Crim. App. Jan. 14, 2025) (quoting *United State v. Williams*, 663 F. Supp. 3d 1085, 1133 (D. Ariz. 2023)), *no perm. app. yet filed*. Defendant's rap video, titled "First Day Out," was posted five days after Defendant's arrest, and included footage of his actual arrest in this case. *Cf. id.* (noting that courts "have overwhelmingly recognized that the probative value of rap lyrics is greatly diminished 'when it is unknown who wrote the lyrics, when the lyrics were written, when the songs were recorded and perhaps edited, and/or when they were uploaded to YouTube or similar social media'"). In the video, Defendant admitted that he "got caught with [his] FN," and "about a pound" of marijuana, the exact brand of firearm and approximate amount of marijuana found in Defendant's vehicle. Tenn. R. Evid. 803(1.2) (stating that a party's own statement is not excluded by the hearsay exclusionary rule); *see State v. Patton*, No. M2018-01462-CCA-R3-CD, 2020 WL 1320718, at *13 (Tenn. Crim. App. Mar. 19, 2020) (finding that rap lyrics had probative value as admissions of the defendant charged with attempted murder and robbery because they were sufficiently linked to the defendant and the "lyrics referenced a robbery and murder that detectives talked about in the news" and "there was media coverage of this attempted robbery and murder"); *see State v. Bolden*, No. W2022-01127-CCA-R3-CD, 2024 WL 466168, at *22-23 (Tenn. Crim. App. Feb. 7, 2024) (finding that evidence of the defendants' rap lyrics was relevant because it corroborated other facts in evidence), *perm. app. denied* (Tenn. Sept. 12, 2024).

Further, Defendant has failed to show that the probative value of his rap video was substantially outweighed by the danger of *unfair* prejudice. While his video was certainly prejudicial, we cannot say that it was unfairly prejudicial. *See State v. Gentry*, 881 S.W.2d 1, 7 (Tenn. Crim. App. 1993) ("[T]he mere fact that evidence is particularly damaging does not make it unfairly prejudicial."). Defendant was aware of the charges against him at the time he made the video yet decided to create and post a rap video which included actual footage of his arrest and lyrics based on the facts of his charges. *See State v. Williams*, No. E2019-02236-CCA-R3-CD, 2022 WL 152516, at *21 (Tenn. Crim. App. Jan. 18, 2022) (finding no error in admitting rap video which linked the defendants to a criminal gang as motive for the crime because it was relevant, and its probative value was not substantially outweighed by the danger of unfair prejudice), *perm. app. denied* (Tenn. Aug. 4, 2022). The trial court did not abuse its discretion in admitting the rap video.

We find this case is readily distinguishable from *Britton*, in which a panel of this court recently reversed and remanded for a new trial based in part on a trial court's erroneous admission of lyrics from the defendant's rap videos in a first degree murder trial.

2025 WL 88338, at *34. In *Britton*, the State sought admission of the defendant's rap videos and lyrics to rebut the defendant's claim of self-defense. The trial court excluded the rap videos after finding that the probative value was substantially outweighed by the danger of unfair prejudice but allowed the State to cross-examine the defendant regarding certain rap lyrics violent in nature. *Id.* at *10, *15. This court found that the trial court abused its discretion because the lyrics presented "a serious risk of inflaming the jurors" because the lyrics were "highly inflammatory," did not relate to the defendant's character for violence because there was no proof that the lyrics were autobiographical or based on the facts of the specific case, and "neatly [fell] into the category of 'general or vague references to violence'" that were not corroborated by other evidence of the defendant's character for violence. *Id.* at *21-22. This court further found that the error was not harmless because the State's closing argument and jury instructions could have misled the jury to consider the evidence as substantive evidence rather than for the sole purpose of determining the defendant's credibility. *Id.* at *23. In this case, Defendant's rap video was directly related to his charges as the lyrics were based on the facts of this case and the video included actual footage of Defendant's arrest. Defendant's admissions in his rap video were introduced as substantive evidence of his commission of the crimes. Further, it is clear that Defendant's rap video was made at some point between October 15, the day of Defendant's arrest, and October 20, the day that Defendant's rap video was uploaded on YouTube. Finally, the only lyrics that the jury heard were those related to the facts of this case, or so interwoven that the lyrics could not be removed, and were not "highly inflammatory." Defendant is not entitled to relief.

## II. Admission of Officer's Statement from Body Camera Footage

Defendant argues that the trial court erred in not muting the portion of the body camera footage during which Officer Shephard told a colleague "it's probably the most weed [he] ever got." Defendant contends that the statement was irrelevant hearsay and that "[a]ny relevant evidence that the State wanted to show was also captured by photographs[.]" The State asserts that Defendant has waived this challenge by failing to support it with argument, and alternatively, any error was harmless. We agree with the State that Defendant has waived this issue.

"As an intermediate court of appeals, our function is principally to review and correct errors." *State v. Cunningham*, No. M2023-00909-CCA-R3-CD, 2024 WL 3634259, at *2 (Tenn. Crim. App. Aug. 2, 2024), *no perm. app. filed*. "[S]imply raising an issue is not sufficient to preserve it for appellate review." *State v. Gooch*, No. M2022-01395-CCA-R3-CD, 2024 WL 2814624, at *4 n.4 (Tenn. Crim. App. June 3, 2024), *perm. app. denied* (Tenn. Nov. 20, 2024). Parties must identify errors they believe were committed and establish why they are entitled to relief under the law. *State v. Young*, No. M2022-00999-CCA-R3-CD, 2024 WL 4100746, at *10 (Tenn. Crim. App. Sept. 6, 2024),

- 9 -

*no perm. app. filed*.  Under Tennessee Rule of Appellate Procedure 27(a)(7)(A), an appellant must present an argument that includes "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record[.]"  Further, the rules of this court mandate that issues raised by an appellant that "are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived."  Tenn. Ct. Crim. App. R. 10(b).

Here, Defendant has clearly identified his complaint with Officer Shephard's statement in the body camera footage, but he has failed to present adequate argument as to why he is entitled to relief.  Other than citation to the applicable rules of evidence and standards of review, Defendant's brief includes only the following argument:

> The contents of the discussion between the two officers are not relevant according to Tennessee Rules of Evidence 401.  Because the statements between the officers are not relevant, the statements are also not admissible under Tennessee Rules of Evidence 402.  Therefore, the [t]rial [c]ourt should have suppressed those statements and allowed the video to be muted during the irrelevant conversations between the officers when the video was shown to the jury.  Any relevant evidence that the State wanted to show was also captured by photographs taken by the officer on the scene which made the video cumulative and unnecessary.

Defendant does not provide argument as to how Officer Shephard's statement was hearsay or why the statement was irrelevant.  "An issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements" of Tennessee Rule of Appellate Procedure 27(a)(7).  *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).  To address Defendant's concerns, we would be required to develop arguments as to how the statement fit within the definition of hearsay, whether there was an applicable hearsay exception, and why the hearsay statement was irrelevant to the issues at trial.  *See State v. Burgins*, No. E2021-00620-CCA-R3-CD, 2022 WL 2317028, at *25 (Tenn. Crim. App. June 28, 2022) (finding waiver due to inadequate briefing when the defendant's brief included only the standard of review, a portion of the relevant rule of evidence, and citationless argument), *perm. app. denied* (Tenn. Nov. 16, 2022).  "Our role as an error correction court does not include – and perhaps does not even permit – our undertaking" these efforts.  *Cunningham*, 2024 WL 3634259, at *3.  Defendant is not entitled to relief.

### III.    Lieutenant Gilley's Expert Testimony

Defendant raises multiple challenges to Lieutenant Gilley's testimony as an expert. First, Defendant argues that Lieutenant Gilley should not have been qualified as an expert in illegal narcotics investigations.  Next, he asserts that the trial court erred by allowing Lieutenant Gilley to give an opinion regarding the ultimate issue of whether Defendant possessed the marijuana with intent to sell or distribute.  Finally, Defendant asserts that the trial court erred by failing to declare a mistrial "[b]ecause the jury heard Lieutenant Gilley testify that his interpretation of street lingo for 'heat' means gun and that drug dealers carry guns for protection," which was "outside the scope of his qualifications."  The State asserts that Defendant has waived his challenge to Lieutenant Gilley's qualification as an expert witness by failing to object and that Lieutenant Gilley's expert testimony was otherwise admissible.  We conclude that Defendant has waived his first and second arguments by failing to contemporaneously object.  We also conclude that the trial court did not err in failing to grant a mistrial.

First, Defendant asserts that the trial court erred in declaring Lieutenant Gilley an expert because his opinion was "based on how other alleged criminal defendants have acted in the past."  Following defense counsel's voir dire of Lieutenant Gilley, defense counsel did not object to Lieutenant Gilley's testifying as an expert; thus, Defendant has waived this challenge.  Failing to contemporaneously object to an alleged error results in waiver even if the defendant later raises the issue in a motion for new trial.  *State v. Thompson*, No. E2018-01481-CCA-R3-CD, 2019 WL 5298733, at \*9 (Tenn. Crim. App. Oct. 18, 2019) (finding waiver when the defendant failed to object to improper closing argument but raised the issue in his motion for new trial); *State v. Lineberry*, No. 01C01-9412CC-00439, 1995 WL 441608, at \*4 (Tenn. Crim. App. July 26, 1995) (finding waiver when the defendant raised an issue for the first time in his amended motion for new trial); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

We also note that Defendant failed to include this challenge in his statement of the issues, and thus, even had Defendant properly preserved the issue, it would have been waived due to deficient briefing.  *See* Tenn. R. App. P. 27(a)(4); *Hodge*, 382 S.W.3d at 335 (stating that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance" with Rule 27(a)(4)); *State v. Holmgren*, No. M2023-00795-CCA-R3-CD, 2024 WL 2891416, at \*2 (Tenn. Crim. App. June 10, 2024) (same), *no perm. app. filed*; *City of Memphis v. Edwards by & through Edwards*, No. W2022-00087-SC-R11-CV, - - S.W.3d - -, 2023 WL 4414598, at \*2 (Tenn. 2023) (same).

Accordingly, this court's review of Defendant's challenge to Lieutenant Gilley's testimony, if any, is limited to plain error review and Defendant has not requested plain error review. *State v. Brodie*, No. M2023-00135-CCA-R3-CD, 2024 WL 3272795, at *13 (Tenn. Crim. App. July 2, 2024) (citing *State v. Enix*, 653 S.W.3d 691, 700-01 (Tenn. 2022)), *no perm. app. filed*. Although the State raised waiver in its brief, Defendant did not file a reply brief. "Where a defendant fails to respond to a waiver argument, only particularly compelling or egregious circumstances could typically justify our sua sponte consideration of plain error relief." *State v. Manning*, No. E2022-01715-CCA-R3-CD, 2023 WL 7439203, at *4 (Tenn. Crim. App. Nov. 9, 2023) (quoting *State v. Thompson*, No. W2022-01535-CCA-R3-CD, 2023 WL 4552193, at *5 (Tenn. Crim. App. July 14, 2023), *no perm. app. filed*), *perm. app. denied* (Tenn. May 16, 2024). We find no particularly compelling or egregious circumstances to justify our sua sponte review. *See State v. Elliot*, 366 S.W.3d 139, 147 (Tenn. Crim. App. 2010) (allowing expert testimony from officers regarding illicit drug trade based on training, experience, and familiarity). Defendant is not entitled to relief on this basis.

Next, Defendant asserts that the trial court erred by allowing Lieutenant Gilley to give his expert opinion regarding whether Defendant possessed the marijuana with the intent to sell or deliver. Although not raised by either party, we conclude that Defendant has waived this issue for failing to contemporaneously object. At trial, the State asked Lieutenant Gilley if he had "developed an expert opinion" regarding Defendant's intent to sell or deliver, to which Lieutenant Gilley testified that it was his opinion "[t]hat [Defendant] did possess marijuana with the intent to sell or deliver." Defendant did not object. Because Defendant failed to contemporaneously object to Lieutenant Gilley's testimony, this court may review the issue, if at all, for plain error. *See State v. Barlow*, No. W2008-01128-CCA-R3-CD, 2010 WL 1687772, at *18 (Tenn. Crim. App. Apr. 26, 2010) (finding that the appellate court could only review for plain error because the defendant failed to object to the expert's qualifications and opinion testimony). Even if Defendant had acknowledged his waiver and requested plain error relief, he would not be entitled to relief because no clear and unequivocal rule of law was breached. *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (citing *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)) (stating that all five plain error factors must be present and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established"). "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Tenn. R. Evid. 704; *State v. Jones*, No. W2013-00333-CCA-R3-CD, 2014 WL 6680680, at *9 (Tenn. Crim. App. Nov. 26, 2014) (finding no error in allowing opinion testimony regarding whether the defendant possessed drugs with the intent to sell or deliver because it was admissible as an expert opinion). Defendant is not entitled to relief on this basis.

Finally, Defendant asserts that the trial court erred by failing to declare a mistrial when Lieutenant Gilley testified "outside the scope of his qualifications" regarding why a drug dealer might be in possession of a firearm and in interpreting phrases from Defendant's rap video. As an initial matter, we must determine which of Lieutenant Gilley's interpretations Defendant has properly challenged on appeal. During trial, Defendant lodged a general objection to Lieutenant Gilley's interpretation of various phrases in Defendant's rap video as being outside the scope of his expertise. In his motion for new trial, Defendant asserted that the trial court erred by "allowing Officer Gilley to explain lingo unrelated to the drug trade in the Defendant's rap video." Defendant did not expand upon this argument in his amended motions for new trial or at the hearing. In his brief before this court, Defendant's argument section regarding this issue focuses solely on Lieutenant Gilley's interpretation that "'[h]eat' is a gun." Thus, our review is limited to Lieutenant Gilley's interpretation of "heat." To the extent that Defendant challenges any other of Lieutenant Gilley's interpretations, Defendant has waived those challenges due to an inadequate brief. *See Cunningham*, 2024 WL 3634259, at *3; Tenn. R. App. P. 27(a)(7)(A).

Defendant argues that the trial court erred by not declaring a mistrial after Lieutenant Gilley testified "outside the scope of his expertise." This court will not interfere with a trial court's exercise of its discretion regarding whether to grant a motion for mistrial "absent a clear abuse of discretion on the record." *State v. Hansard*, No. E2021-01380-CCA-R3-CD, 2022 WL 17574357, at *4 (Tenn. Crim. App. Dec. 12, 2022) (quoting *State v. Bell*, 512 S.W.3d 167, 187 (Tenn. 2015)), *perm. app. denied* (Tenn. Apr. 17, 2023). A mistrial is appropriate only when there is a manifest necessity, meaning "a trial cannot continue, or a miscarriage of justice would result if it did." *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000); *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). The party requesting a mistrial carries the burden of establishing its necessity. *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008).

A witness with specialized skill, knowledge, education, experience, or training "may testify in the form of an opinion or otherwise" if the expert's "specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid. 702. This court reviews a trial court's decisions regarding the admissibility of expert testimony for an abuse of discretion. *State v. Copeland*, 226 S.W.3d 287, 301 (Tenn. 2007). "[W]hen the State establishes that an officer possesses the necessary training, experience, and familiarity with the illicit drug trade, the officer may testify about matters related to the business of buying, selling, trading, and use of illegal drugs pursuant to Rule 702 of the Tennessee Rules of Evidence." *State v. Atkins*, No. W2013-02544-CCA-R3-CD, 2014 WL 4792798, at *6 (Tenn. Crim. App. Sept. 25, 2014) (quoting *Elliot*, 366 S.W.3d at 147). As an expert in illegal narcotics investigations, Lieutenant Gilley was qualified to give his opinion regarding matters "related to the

- 13 -

business of buying, *selling*, trading, and use of illegal drugs[.]" *See id.* (emphasis added). Lieutenant Gilley testified based on his training and experience that many drug dealers possessed firearms for fear of being robbed. Testimony regarding typical behavior of drug dealers is clearly "related to the business" of illegal drug sales. Lieutenant Gilley also testified that based on his "experience and [his] training and [his] time on the streets in dealing with illegal drug transactions" that the phrase "brand-new heat" referred to a gun.

The trial court did not abuse its discretion in finding that Lieutenant Gilley's testimony was based on "his experience as an expert in the field of illegal narcotics transactions" nor by denying Defendant's motion for mistrial based on that testimony. Defendant is not entitled to relief.

## IV.    Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his drug convictions because the State failed to establish that the plant material was actually an illegal substance and that he possessed the plant material with the intent to sell or deliver. He also asserts that the evidence was insufficient to prove that he was in possession of the firearm. The State argues that the evidence was sufficient. We agree with the State.

As an initial matter, we must determine which convictions Defendant challenges. In the argument section of his brief, Defendant states that the "jury's verdict is inconsistent with the facts of the case and counts [one] through [four] should therefore be dismissed." However, the remainder of his brief focuses exclusively on the drug and firearm convictions. Because any challenge to the sufficiency of the evidence for counts three and four is unsupported by any argument or citations to relevant authority or the record, Defendant has waived our review of this issue. *See State v. Watson*, 227 S.W.3d 622, 648 (Tenn. Crim. App. 2006) ("Failure to cite authority to support argument will result in waiver of the issue."); Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7).

When evaluating the sufficiency of the evidence on appeal, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). The standard of review is the same whether a conviction is based on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). Further, circumstantial evidence need not remove every reasonable hypothesis except that of guilt. *Id.* at 381 (quoting *United State v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of

showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (quoting *Hanson*, 279 S.W.3d at 275). Further, the State is afforded "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

The jury evaluates the credibility of the witnesses, determines the weight to be given to witnesses' testimony, and reconciles all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379. A guilty verdict "accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997) (citing *State v. Grace*, 493 S.W.3d 474, 476 (Tenn. 1973)). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *Bland*, 958 S.W.2d at 659).

### Drug convictions

Under Tennessee Code Annotated section 39-17-417(a)(4), it is unlawful for a person to knowingly "[p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Marijuana is a Schedule VI controlled substance. T.C.A. § 39-17-415(a)(1). The identity of the controlled substance is an essential element of the offense. *State v. Schutt*, No. M2022-00905-CCA-R3-CD, 2023 WL 6120739, at *6 (Tenn. Crim. App. Sept. 19, 2023), *no perm. app. filed*.

Defendant asserts that the evidence was insufficient to show that he possessed the plant material with intent to sell and deliver and that the plant material was, in fact, marijuana. While Defendant's brief contains two sentences asserting that the evidence was insufficient to support a finding that he possessed the marijuana with the intent to sell and deliver, the remainder of his argument challenging his drug convictions focuses solely on whether there was sufficient evidence to establish the plant material was marijuana rather than hemp. Because Defendant does not cite to the record or any relevant authority or present any argument that the evidence was insufficient to establish the requisite mental state, Defendant has waived this argument. *See Watson*, 227 S.W.3d at 648; Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7).

Regarding the identification of the plant material, Defendant argues that because confirmatory testing was not conducted, the evidence was insufficient to prove that the

plant material was marijuana. Agent Strandquist testified about the presumptive testing she conducted on the plant material and admitted that she could not differentiate between legal hemp and illegal marijuana based on that testing. However, there was additional circumstantial evidence in this case. Agent Strandquist unequivocally stated that in her expert opinion, that the plant material was marijuana explaining that the presumptive testing identified the plant material as marijuana, and that in the "thirty to forty times" she had followed presumptive testing with confirmatory testing, the results of the presumptive testing were confirmed "every single" time. Officer Shephard testified that he immediately smelled the odor of marijuana when he approached Defendant's vehicle and when he asked Defendant how much marijuana he had, Defendant handed Officer Shephard a bag containing plant material; Defendant never claimed that the plant material and the odor from the substance he was smoking were not marijuana. Further, Lieutenant Gilley testified he had never seen legal hemp repackaged in plastic bags, that he had not known people to smoke "a blunt" of hemp, and he had not heard "weed" used in reference to any substances other than marijuana. Additionally, in his rap video, Defendant admitted that he was "caught with about a pound," which is the approximate amount of plant material seized.

While "the far better practice is to conduct a field test or a pre-trial scientific analysis," Tennessee courts have consistently upheld convictions for possession of marijuana based on circumstantial evidence. *State v. White*, 269 S.W.3d 903, 906-07 (Tenn. 2008) (upholding conviction for simple possession of marijuana based on the officer's testimony that the plant material was marijuana); *State v. Siner*, No. W2020-01719-CCA-R3-CD, 2022 WL 252354, at *8 (Tenn. Crim. App. Jan. 27, 2022) (finding sufficient evidence that the defendant was in constructive possession of marijuana cigarette when the cigarette was not forensically tested and the agent testified that he could not distinguish between hemp and marijuana), *no perm. app. filed*; *State v. Daniels*, 656 S.W.3d 378, 392 (Tenn. Crim. App. 2022) (upholding conviction for possession of marijuana when agent testified that "her analysis did not distinguish between marijuana and hemp"); *State v. v. Hughes*, No. W2022-00571-CCA-R3-CD, 2023 WL 2159249, at *3-4 (Tenn. Crim. App. Feb. 22, 2023) (same), *perm. app. denied* (Tenn. May 15, 2023).

The evidence presented was sufficient for the jury to reasonably conclude that the plant material was marijuana. Defendant is not entitled to relief.

**Firearm convictions**

Defendant was convicted as charged in count seven of unlawful possession of a firearm by an unlawful user of a controlled substance, a Class A misdemeanor. Defendant was convicted in count eight of unlawful possession of a firearm after having been convicted of a felony crime of violence. It is unlawful for a person to possess a firearm

who has been convicted of a felony crime of violence or is otherwise "prohibited from possessing a firearm under any other state or federal law." T.C.A. §§ 39-17-1307(b)(1)(A), (f)(1)(C). Aggravated robbery is a felony crime of violence. *Id.* § -1301(3). The trial court charged the jury that the "federal law is 18 United States Code [s]ection 922(g)" which makes it unlawful for any person who is an unlawful user of any controlled substance, including marijuana, to possess a firearm. 18 U.S.C. § 922(g); 21 U.S.C. §§ 802, 812(c)(10) (designating marijuana as a controlled substance).

"[T]he element of 'possession' is really a question about one's *control* over an item[.]" *State v. Chism*, No. E2023-00620-CCA-R3-CD, 2024 WL 4824881, at *4 (Tenn. Crim. App. Nov. 19, 2024) (citing *Peters v. State*, 521 S.W.2d 233, 235 (Tenn. Crim. App. 1974)), *no perm. app. filed*. Possession may be either actual or constructive. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Actual possession concerns a person's physical control over an item, but "constructive possession requires only that a defendant have 'the power and intention . . . to exercise dominion and control over' the item allegedly possessed." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014) (quoting *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013)). More simply, "constructive possession is the ability to reduce an object to actual possession." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995); *State v. Ross*, 49 S.W.3d 833, 845-46 (Tenn. 2001); *State v. Transou*, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996). Constructive possession is evaluated based on the totality of the circumstances. *Siner*, 2022 WL 252354, at *5 (first citing *State v. Richards*, 286 S.W.3d 873, 881 (Tenn. 2009); and then citing *Robinson*, 400 S.W.3d at 534).

As the driver and sole occupant of the vehicle, Defendant was in exclusive control of the vehicle. While the firearm was found under the passenger seat rather than the driver seat, it was well within Defendant's reach. Officer Shephard testified that the firearm was found "[e]xtremely close" to where Defendant had retrieved the bag of marijuana, which Defendant admitted he possessed. Although Mr. Smith testified that the firearm was his and that Defendant was unaware the firearm was in Defendant's vehicle, it was the jury's prerogative whether to accredit this testimony. *See State v. Robertson*, No. W2020-00365-CCA-R3-CD, 2021 WL 2189998, at *5 (Tenn. Crim. App. May 28, 2021) (finding the evidence sufficient to support that the defendant possessed a firearm found on the driver side floorboard of his truck despite a witness testifying that "the gun was [the witness's] firearm, that he accidentally left the gun under the [defendant]'s driver's seat when he drove the truck to the store, and that the [defendant] did not know about the gun"). This court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *Bland*, 958 S.W.2d at 659).

The evidence presented was sufficient for the jury to reasonably conclude that Defendant possessed the firearm. Defendant is not entitled to relief.

## V. Sentencing

Defendant argues that the trial court erred by imposing a seventeen-year sentence for his count eight firearm conviction because the sentence imposed was "excessive and inconsistent with the purposes and principles of sentencing." Specifically, Defendant argues that the trial court failed to consider that the average sentence for a Range II multiple offender found guilty of a Class B felony was "between 13.1 years and 13.9 years[.]" Defendant does not challenge the sentences for his other convictions. The State asserts that the trial court properly sentenced Defendant. We agree with the State.

On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016). This court reviews sentencing decisions under an "abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). "In short, we will uphold the trial court's sentencing decision on appeal 'so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute.'" *State v. Smith*, No. M2023-00367-CCA-R3-CD, 2024 WL 1699210, at *5 (Tenn. Crim. App. Apr. 19, 2024) (citing *Bise*, 380 S.W.3d at 709-10), *no perm. app. filed*. "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)).

Once a trial court determines the appropriate range of punishment, a trial court must consider any evidence received at trial and the sentencing hearing, the presentence report, the purposes and principles of sentencing, any argument for alternative sentencing, the nature and characteristics of the criminal conduct involved, evidence regarding enhancement and mitigating factors, statistical information provided by the administrative office of the court regarding sentencing practices for similar crimes, any statement the defendant makes on his own behalf, and the results of a validated risk and needs assessment. T.C.A. § 40-35-210(a), (b). Additionally, the sentence imposed shall be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4).

As Defendant correctly notes, the trial court did not state on the record that it considered the sentencing practices for similar offenses in Tennessee. *See id.* § 40-35-210(b)(6). While the trial court could have been more comprehensive in its findings,

"[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption." *Bise*, 380 S.W.3d 682. This court has observed:

> [T]rials courts need not comprehensively articulate their findings concerning sentencing, nor must their reasoning be "particularly lengthy or detailed." Instead, the trial court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision[-]making authority."

*State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at \*5 (Tenn. Crim. App. Apr. 12, 2023) (citing *Bise*, 380 S.W.3d at 706), *no perm. app. filed*. This court has applied the presumption despite a trial court's failure to specifically state its consideration of one of the statutory considerations. *See State v. Henderson*, No. W2022-00882-CCA-R3-CD, 2023 WL 4105937, at \*6 (Tenn. Crim. App. June 21, 2023) (stating that explicit consideration of section 40-35-103(4) is not required so long as the record shows the trial court articulated reasons for imposing the sentence such that it facilitates appellate review), *no perm. app. filed*; *State v. Mahaffey*, No. W2022-01778-CCA-R3-CD, 2024 WL 418130 (Tenn. Crim. App. Feb. 5, 2024) (concluding that the record was sufficient to infer consideration of whether the sentence was justly deserved in relation to the seriousness of the offense and the least severe measure necessary), *no perm. app. filed*. Despite the trial court's brief findings, the record reflects that the trial court considered enhancement and mitigating factors, imposed a sentence within the applicable range, and made the requisite findings in support of its ruling. We will review the trial court's sentence under an abuse of discretion standard with a presumption of reasonableness.

The trial court imposed a within-range sentence of seventeen years for count eight and ordered all counts to run concurrently. *See* T.C.A. § 40-35-112(b)(2) (mandating that a Range II sentence for a Class B felony is between twelve and twenty years). Defendant was not eligible for alternative sentencing. *Id.* § -303(a) (stating that a defendant is eligible for probation "if the sentence actually imposed upon the defendant is ten (10) years or less"). The trial court applied one enhancement factor and gave minimal weight to one mitigating factor after considering Defendant's presentence report "as a whole" which was the only evidence submitted at the sentencing hearing. The trial court specifically noted Defendant's history of criminal convictions and criminal behavior, including his numerous TDOC disciplinary infractions. The trial court did not abuse its discretion in imposing a within-range sentence. Defendant is not entitled to relief.

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed.

s/ *Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE